POWER CONTROLS CORP., Appellee,

v.

HYBRINETICS, INC., Appellant.

Appeal No. 86–1041.

United States Court of Appeals, Federal Circuit.

Nov. 13, 1986.

Richard E. Backus, Flehr, Hohbach, Test, Albritton & Herbert, San Francisco, Cal., argued for appellant. With him on the brief were William J. Egan, III, Luann Cserr and Richard P. Doyle, Jr.

Ted D. Lee, Gunn, Lee & Jackson, P.C., San Antonio, Tex., argued for appellee. With him on the brief was Jack V. Musgrove. Also on the brief was John F. Barg, Landels, Ripley & Diamond, San Francisco, Cal., of counsel.

Before FRIEDMAN, SMITH and BISSELL, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Northern District of California granting a preliminary injunction in a suit charging infringement of a design patent, and unfair competition in violation of federal and state law. We vacate in part and affirm in part.

## I

A. U.S. Patent No. Des. 281,580 ('580 patent), which appellee Power Controls Corp. (Power Controls) owns, covers a design for a plastic "clam shell" type of package used to encase an electrical rotary dimmer switch. Figure 4 of the patent best illustrates the package:

**FIG 4**

In December 1985, Power Controls filed suit in the district court against the appellant Hybrinetics, Inc. (Hybrinetics), charging that Hybrinetics had infringed the '580 patent, had engaged in unfair competition in violation of 15 U.S.C. § 1125(a) (1982) and §§ 17200–17208 of the California Business and Professions Code (California Code), and had violated § 17300 of the California Code by duplicating Power Controls' packages through a direct molding process. Hybrinetics filed an answer and a counterclaim alleging that the patent was invalid and unenforceable, and denying infringement and unfair competition.

Following discovery, Power Controls moved for a preliminary injunction. After a hearing, the district court on March 12, 1986, granted a preliminary injunction pending trial. The injunction prohibited Hybrinetics from (1) "[i]nfringing" the '580 patent, (2) making, using or selling "clam shell packaging substantially similar to, or copied from, the [registered trademark] Dynapak packaging of Power Controls," (3) "[u]nfairly competing with Power Controls under [the federal and state statutes specified in the complaint] by displaying, offering for sale, or selling a clam shell package substantially similar to, or copied from [Power Controls' Dynapak packaging]," (4) using a particular mold "to make clam shell packaging," (5) "[d]isplaying, offering for sale, or selling Hybrinetics products by distributing or displaying any advertising material that shows [Power Controls' Dynapak packaging]," and (6) "[d]estroying or disposing of Hybrinetics clam shell packaging substantially similar to, or copied from [Power Controls' Dynapak packaging], pending a final disposition of this case."

The only finding the district court made with respect to the basis for the injunction was as follows: "[T]he Court finds that the Hybrinetics clam shell packages placed before this Court as exhibits are substantially similar to, or copied from, the [registered trademark] DynaPak packaging of Power Controls."

On March 17, 1986, Hybrinetics filed in the district court a notice of appeal from the preliminary injunction and a motion for a stay. On April 8, 1986, the district court denied a stay. The parties then agreed to postpone the effectiveness of the injunction for 45 days to enable Hybrinetics to change its practices to conform to the injunction. On Hybrinetics' motion, we stayed the injunction and expedited the hearing on the appeal.

B.  On June 5, 1986, the day before oral argument, Power Controls sought leave to file a supplemental brief to bring before

the court an order for a "modified injunction" that the district court had entered on June 3, 1986. The district court had acted in response to Power Controls' motion to modify the injunction, filed May 12, 1986. The district court described the motion as having been filed "in order to clarify the grounds on which the injunction was originally granted." After a hearing, the district court granted the motion and entered a modified preliminary injunction.

In the modified injunction, the district court found "a substantial likelihood of success" on Power Controls' claims that (1) "the packaging depicted in [the '580 patent] is new, nonobvious, and primarily ornamental," (2) "the trade dress of the [packages] have acquired a secondary meaning associated with Power Controls," and (3) "the clam shell packages used by Hybrinetics are, in the eye of an ordinary observer, substantially the same as the respective packages used and created by Power Controls, and thus creates a likelihood of confusion as to the source of the packages." The court further found

> a substantial likelihood that plaintiff will be able to establish the following facts: In 1984, [the president] of ... Hybrinetics obtained samples of Power Controls' packages and instructed a mold maker to construct molds which would duplicate the packages. While these molds were being prepared, [the president] instructed his advertising department to use Power Controls' packages, and the advertising department did so use the packages, for advertising materials ostensibly depicting [Hybrinetics'] electrical switches. Pursuant to [the president's] instruction, molds were prepared from Power Controls' packages, and Hybrinetics has used and is still using said molds for creating clam shell packages for its product.

Finally, the court stated that Power Controls "has demonstrated a likelihood of success on the merits of its unfair competition claims and patent infringement claims, and [Power Controls] has shown the presumptive validity of [the '580 patent]."

Although the district court made some changes in the language of the preliminary injunction, the scope and content of the preliminary injunction remained essentially the same as in the original injunction.

Hybrinetics has not appealed from the modified preliminary injunction of June 3, 1986. The time for such appeal has expired. Fed.R.App.P. 4(a)(1), (5).

## II

■ A. Power Controls filed its motion to modify the preliminary injunction on May 12, 1986, almost two months after Hybrinetics had filed its notice of appeal from that injunction on March 17, 1986. The Ninth Circuit, whose law we here follow on this procedural point, has held that a district court has no jurisdiction to amend its findings of fact and conclusions of law after a notice of appeal has been filed. *Barber v. United States,* 711 F.2d 128, 130 (9th Cir.1983); *Matter of Combined Metals Reduction Co.,* 557 F.2d 179, 200–01 (9th Cir.1977); *cf. Flynt Distributing Co. v. Harvey,* 734 F.2d 1389, 1395 n. 3 (9th Cir. 1984) (the district court's entry, after an appellant has filed his brief on appeal, of modified findings of fact and conclusions of law which to some extent rely on findings the appellee proposed "detract[s] from the appearance of justice" because it suggests that the appellee "carefully tailor[ed] his proposed findings to cure any deficiencies disclosed by the [appellant's] brief").

In *Barber,* the district court entered an injunction supported by findings of fact and conclusions of law on June 29, 1981. A notice of appeal was filed on July 1, 1981, and on July 9, 1981, the district court entered new findings of fact and conclusions of law to correct its misunderstanding about the applicable law. The Ninth Circuit held that the district court did not have jurisdiction to amend its findings after the appeal had been filed.

The Ninth Circuit stated, however, that "the district court would have reconsidered its findings of fact and conclusions of law had it been proper to have done so. We therefore remanded to the district court to

hold hearings and to consider amendments to the findings and conclusions. We retained jurisdiction over the appeal and gave the parties an opportunity to file new briefs." On remand, the district court entered new findings identical to those it had entered on July 9, 1981.

When the district court in this case entered its modified preliminary injunction on June 3, 1986, which was two-and-a-half months after the notice of appeal had been filed and only three days before we were to hear oral argument of the appeal, the court long since had lost jurisdiction to act in the case. Indeed, Power Controls' action in this case closely parallels the situation the Ninth Circuit described in *Harvey, supra.* Power Controls filed its motion to modify on May 12, 1986, almost a month after Hybrinetics had filed its opening brief on April 15, 1986, which criticized the failure of the district court to make findings allegedly necessary for a preliminary injunction. Power Controls' filing in these circumstances suggests that it "carefully tailor[ed]" its proposed modifications "to cure any deficiencies disclosed by [Hybrinetics'] brief." *Id.* at 1395 n. 3.

■ The proper procedure for Power Controls to have followed if it wished to seek modification by the district court of the preliminary injunction, would have been for it to have filed in this court a motion to remand the case to enable the district court to consider the proposed modifications.

B. Although the Ninth Circuit in *Barber* remanded the case for the district court to reconsider the modifications it had made in its injunction while the appeal was pending, we do not follow that course here. Unlike the apparent situation in *Barber,* here the district court held a hearing, at which both parties were heard, before it entered the modified preliminary injunction. At oral argument before us, the parties expressed a willingness to argue the merits of the modified preliminary injunction and urged us to decide the appeal on that basis.

As explained in parts III and IV below, we conclude that most parts of the prelimi-

nary injunction, the substantive provisions of which the modified injunction did not substantiallly change, cannot stand. In these circumstances we think it would be an empty formalism and a waste of judicial resources for us (1) to vacate the preliminary injunction and remand the case to the district court, (2) which obviously would reenter the modified preliminary injunction, (3) for Hybrinetics to file a notice of appeal from the reentered injunction, and (4) for this court again to consider the issues the parties have litigated in this appeal and which we believe we may appropriately decide at this time.

Since, as indicated, the district court was not authorized to enter the modified preliminary injunction, that injunction had no effect and we shall not review any of its provisions. We restrict our consideration to the provisions of the original preliminary injunction of March 12, 1986.

### III

■ Under 35 U.S.C. § 171 (1982), a design patent may be granted only for a "new, original and ornamental design." If the patented design is primarily functional rather than ornamental, the patent is invalid. As the Court of Customs and Patent Appeals stated in *In re Carletti,* 328 F.2d 1020, 1022, 140 USPQ 653, 654 (Fed.Cir. 1964), in affirming the refusal of a patent on a design, the appearance of which was "dictated by functional considerations":

> Many well-constructed articles of manufacture whose configurations are dictated solely by function are pleasing to look upon.... But it has long been settled that when a configuration is a result of functional considerations only, the resulting design is not patentable as an ornamental design for the simple reason that it is not "ornamental"—was not created for the purpose of ornamenting. [Citations omitted.]

*Id.*

In the present case Hybrinetics contends that the '580 patent is invalid because, *inter alia,* it is primarily functional. Since a

preliminary injunction requires the moving party to show a reasonable likelihood of success on the merits, *Roper Corp. v. Litton Systems, Inc.*, 757 F.2d 1266, 1272 n. 5, 225 USPQ 345, 349 n. 5 (Fed.Cir.1985), the question before us on this aspect of the case is whether the record shows that Power Controls is likely to prevail on its contention that the design of the '580 patent is ornamental and the patent therefore is valid. Stated another way, has Hybrinetics shown that at the trial it is likely to overcome the presumption of validity that the '580 patent has under 35 U.S.C. § 282 (1982) by showing that the '580 patent design is primarily functional.

■ Although the district court did not address this issue in the original preliminary injunction, in the modified injunction the court found that there was "a substantial likelihood of success on the claim that the packaging depicted in [the '580 patent] is new, nonobvious and primarily ornamental." Even assuming that this finding was inherent in the court's original order—a dubious assumption—we conclude that the record does not support the finding that the '580 patent design is "primarily ornamental" and that this finding is clearly erroneous. Accordingly, Power Controls has not demonstrated a reasonable likelihood that it will prevail on its patent infringement claim.

In opposing the motion for preliminary injunction, Hybrinetics submitted a lengthy affidavit by Mr. Wickersham, a patent lawyer. In that affidavit, Mr. Wickersham analyzed the deposition of Mr. Stevens, the inventor of the '580 patent, and based on that deposition concluded that "the subject matter of Design Patent Des. 281,580 is almost entirely functional, with few if any ornamental features." In his deposition, Mr. Stevens was unable to show that any of the features of the '580 patent about which he was questioned was primarily ornamental. Instead, his answers inevitably discussed each feature's functional nature. For instance, Mr. Stevens testified that

1. The package was made clear so that the product could be viewed by the consumer and so that a paper insert card could be protectively placed inside the plastic package and still be read;

2. The recesses in the front and back of the package were designed to fit snugly around the rotary dimmer switch and were placed as they were to balance the package;

3. The rounded corners and edges, and the angled surfaces were necessary for the production of a workable mold;

4. The rim along the periphery of the package was designed to hold the package rigid and to lock the package together; and

5. The hole for hanging the package on a peg was designed to extend only through the back of the package to obviate the need for precise package alignment during molding and assembly.

In view of the strong and clear showing of functionality made in Mr. Wickersham's affidavit, it was incumbent on Power Controls "to come forward with countervailing evidence" tending to establish validity. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1534, 218 USPQ 871, 876 (Fed. Cir.1983). Power Controls asserts it carried that burden with an affidavit of Mr. Frost, also a patent lawyer. Mr. Frost's affidavit, however, was directed to the question whether the Hybrinetics packages infringed the '580 patent, not whether that patent was functional rather than ornamental.

Although Power Controls states that Mr. Frost's affidavit "clearly establishes the [registered trademark] DynaPak packages were ornamental in nature and aesthetically pleasing," the affidavit neither so states nor provides any basis for so concluding. It makes no attempt to answer the specific and detailed discussion in Mr. Wickersham's affidavit of the functional nature of the various features of the '580 design he discusses.

Power Controls criticizes Mr. Wickersham's affidavit because it did not consider the '580 design as a whole, allegedly contrary to *Gorham Mfg. Co. v. White*, 81 U.S. (14 Wall.) 511, 20 L.Ed 731 (1871). That

case, however, held only that in determining infringement, the design must be analyzed as a whole. We are examining the validity of the '580 patent, not its infringement.

In determining whether a design is primarily functional, the purposes of the particular elements of the design necessarily must be considered. Mr. Wickersham's affidavit properly explained why and how the various elements of the '580 patented package each served a particular functional purpose. This design is composed mainly of functional elements, and we hold that Hybrinetics' showing that it is primarily functional is sufficient to preclude the grant of a preliminary injunction.

■ Since Power Controls offered no convincing evidence that the '580 patent was primarily ornamental, its case in support of the preliminary injunction necessarily rests on the presumption of validity that the '580 patent has. This is a permissible basis for supporting a preliminary injunction. *Roper Corp. v. Litton Systems, Inc.,* 757 F.2d 1266, 1270, 225 USPQ 345, 347 (Fed.Cir.1985). In this case, however, Hybrinetics' strong showing of functionality overcame the presumption at this preliminary injunction stage because it established that Power Controls had shown "no reasonable likelihood of success on the issue of validity." *Id.*

Accordingly, the provisions of the preliminary injunction concerning patent infringement, which the modified injunction repeated, cannot stand and must be vacated.

### IV

Our decision that on this record the '580 patent is primarily functional and that Power Controls therefore has not shown a reasonable likelihood of success on its patent infringement claim also largely disposes of and requires vacation of the provisions of the preliminary injunction directed against Hybrinetics' alleged unfair competition in violation of federal and California law.

■ The Ninth Circuit, the decisions of which we follow on unfair competition issues, *Cable Electric Products, Inc. v. Genmark, Inc.,* 770 F.2d 1015, 1029, 226 USPQ 881, 890 (Fed.Cir.1985), has held that under the federal statute, 15 U.S.C. § 1125(a), "where the features are 'functional,' *i.e.,* they connote other than a trademark purpose, they generally are not protectable." *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769, 772–73, 212 USPQ 85, 87 (9th Cir.1981). The parties have not cited and we have not found any case deciding whether a functional design is entitled to protection under California Code §§ 17200–17208. It is well established, though, that an action for unfair competition cannot be based upon a functional design. J.T. McCarthy, *Trademarks and Unfair Competition* § 7:26 (2d ed. 1984). There is no reason to think that the California courts would apply a different principle in interpreting their statute.

■ Power Controls argues that it is entitled to a presumption of nonfunctionality of its design for purposes of its unfair competition claims by virtue of its design patent, citing *In re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 1342 n. 3, 213 USPQ 9, 17 n. 3 (C.C.P.A.1982). *Morton,* however, does not sustain the contention. Under Ninth Circuit law by virtue of *Cable Electric, supra,* Power Controls cannot rely upon such a presumption of validity to show nonfunctionality. Since the affidavit of Mr. Wickersham made a sufficient showing of functionality to overcome the '580 patent's presumption of validity, *a fortiori* it was sufficient to establish functionality without regard to the presumption.

■ In short, Power Controls has not shown a sufficient likelihood of success on the merits of its federal and state unfair competition claims to support the preliminary injunction covering those claims. *See Sardi's Restaurant Corp. v. Sardie,* 755 F.2d 719, 722–23, 226 USPQ 23, 25 (9th Cir.1985). The provisions of the preliminary injunction dealing with those claims also must be vacated.

## V

The district court enjoined Hybrinetics from "[d]isplaying, offering for sale, or selling Hybrinetics products by distributing or displaying any advertising material that shows the [registered trademark] DynaPak packaging of Power Controls."

It is unclear whether Hybrinetics challenges that provision or, if it does, upon what ground. At oral argument Hybrinetics conceded that it had used Power Controls' packages in its sales literature. Such conduct was improper, and we have no basis for disturbing the preliminary injunction against it.

## VI

Since in this appeal Hybrinetics has not argued that the provisions of the preliminary injunction that enjoined it from (1) using a particular mold to make clam shell packaging and (2) destroying or disposing of packaging substantially similar to or copied from Power Controls' Dynapak packaging are invalid, we do not consider those questions.

### CONCLUSION

The provisions of the March 12, 1986 preliminary injunction that enjoin Hybrinetics from

1. Continuing to make, use, or sell clam shell packaging substantially similar to, or copied from, the [registered trademark] Dynapak packaging of Power Controls;

2. Infringing United States Patent No. Des. 281,580;

3. Unfairly competing with Power Controls under California Business and Professions Code Section 17500, and under 15 U.S.C. Section 1125(a) by displaying, offering for sale, or selling a clam shell package substantially similar to, or copied from, the [registered trademark] Dynapak packaging of Power Controls,

are vacated. The other portions of the preliminary injunction of March 12, 1986, are affirmed.

VACATED IN PART and AFFIRMED IN PART.