848 F.2d 1245
 Unpublished Disposition
NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
AMICUS, INC., Plaintiff-Appellee,
v.
AMERICAN CABLE CO., INC., Defendant-Appellant.
PATTRIDGE POST-TENSION, INC., Plaintiff,
American Cable Co., Inc., Plaintiff-Appellant,
v.
Frederic A. LANG, Gregory F. Fields and Amicus, Inc.,
Defendants-Appellees.
 No. 87-1447.
 United States Court of Appeals, Federal Circuit.
 May 27, 1988.
 
 Before FRIEDMAN, PAULINE NEWMAN, and BISSELL, Circuit Judges.
 FRIEDMAN, Circuit Judge.
 
 DECISION
 
 1
 The judgment of the United States District Court for the Eastern District of Louisiana, which held that the appellant American Cable Co., Inc. (American Cable), infringed United States Patent No. 3,646,748 (the '748 or Lang patent) assigned to the appellee Amicus, Inc. (Amicus), Amicus, Inc. v. American Cable Co., Inc., 660 F.Supp. 161, 4 USPQ2d 1074 (1987), is affirmed.
 
 OPINION
 
 2
 American Cable alleges that the district court erred in (1) finding infringement under the doctrine of equivalents, (2) failing to give an earlier decision collateral estoppel effect, and (3) excluding evidence. It also contends (4) that the District Court for the Western District of Louisiana improperly transferred this case to the Eastern District of that state. The background facts are set out in the district court opinion. We address American Cable's assertions in the order set forth above.
 
 
 3
 1. The district court properly applied the test for equivalents set forth in Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S. 605 (1950), and found that the American Cable "process and product both infringe the Lang patent under the [doctrine of] equivalents." 660 F.Supp. at 166, 4 USPQ2d at 1078. The court noted that:
 
 
 4
 Pattridge freely admits that his goal in modifying the Lang process was to avoid infringing the Lang patent while still being able to use equipment he had previously used to make the Lang product. He admits the change in the die had no purpose other than to attempt to evade an infringement of the Lang patent.
 
 
 5
 .............................................................
 
 
 6
 ...................
 
 
 7
 * * *
 
 
 8
 ... The only genuine difference in the processes is the addition to the American [Cable] process of an obstruction in the extrusion die that has as its sole purpose avoiding literal infringement of the Lang patent. However, claim six of the Lang patent does not teach any particular design for the die to be used in the process. Furthermore, the change did not alter any of the important elements of the manner in which the process performs its function. The American [Cable] process is still an extrusion process....
 
 
 9
 Finally, I find the American [Cable] process produces a result, that is, a product, which is substantially the same as the product produced by the Lang process. The Lang and American [Cable] products are indistinguishable in all important respects. As claim six of the patent requires, both products are undeniably "suitable for use in posttensioning of concrete." In addition, American's Pattridge-type tendon is used and sold interchangeably with American's Lang product. The Pattridge-type product does split slightly, but this has no significant effect on the performance of the product and does not alter my conclusion that the resulting products are substantially the same.
 
 
 10
 Id. at 164-66, 4 USPQ2d at 1076-77.
 
 
 11
 The doctrine of equivalents is designed to prevent circumventing patent protection by making inconsequential variations:
 
 
 12
 [T]o permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for--indeed encourage--the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of law.
 
 
 13
 Graver Tank, 339 U.S. at 607.
 
 
 14
 Infringement under the doctrine of equivalents is a question of fact. SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d 1107, 1125, 227 USPQ 577, 589 (Fed.Cir.1985) (in banc). The court's finding of equivalence has not been shown to be clearly erroneous.
 
 
 15
 American Cable argues that the finding of equivalence is barred by prosecution history estoppel.
 
 
 16
 [A]pplication of prosecution history estoppel to limit the doctrine of equivalents should be performed as a legal matter on a case-by-case basis, guided by equitable and public policy principles underlying the doctrines involved and by the facts of the particular case.
 
 
 17
 Loctite Corp. v. Ultraseal Ltd., 781 F.2d 861, 871 n. 7, 228 USPQ 90, 96 n. 7 (Fed.Cir.1985). In this case, independent claim 1 of the patent in suit is identical to the claim as originally filed and was not changed on reissue. "Seamless" has always been in the claim; it was not used to distinguish from the prior art. Thus, Amicus is not precluded from invoking the doctrine of equivalents.
 
 
 18
 2. American Cable alleges that the decision in Lang v. Pattridge Post-Tension, Inc., 228 USPQ 256 (W.D.La.1984), collaterally estopped the district court from finding infringement. In Lang, the court (1) found that the American Cable process and product did not infringe the Lang patent and (2) granted Pattridge's motion for involuntary dismissal on the issue of infringement under the doctrine of equivalents. Lang (a predecessor in interest to Amicus) did not appeal from that decision.
 
 
 19
 Collateral estoppel is applied in a later action when, inter alia, "the issue is identical to one decided in the first action." A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 702, 218 USPQ 965, 967 (Fed.Cir.1983), cert. denied, 464 U.S. 1042 (1984).
 
 
 20
 In determining that collateral estoppel did not apply in the present case, the district court noted:
 
 
 21
 There are two aspects to the requirement that the "issue" in the subsequent action be identical to the issue decided in the prior action. First, the legal issue decided must be the same. That requirement is satisfied in this case--the issue is the application of the doctrine of equivalents. Second, the controlling facts must be identical. Commissioner v. Sunnen, 333 U.S. 591, 599-600 (1948).
 
 
 22
 660 F.Supp. at 168, 4 USPQ2d at 1079 (parallel citations omitted). The district court found that the controlling facts in the two cases were not identical:
 
 
 23
 The plaintiffs cannot demonstrate that the process used by American [Cable] is identical to that litigated in the prior Pattridge trial. David Pattridge testified that many factors affect the quality of the product produced by his process. ... The more complete the fusion, the less susceptible the product is to splitting. If the amount of splitting changes, the "result" for the purposes of the doctrine of equivalents is different.
 
 
 24
 The same analysis applies to the product claim. Whether the product produces substantially the same result depends in part upon the product's performance in resisting splits. Thus, if the American [Cable] product contains significantly fewer splits than the Pattridge product, a material fact for purposes of the doctrine of equivalents has changed and collateral estoppel is not applicable.
 
 
 25
 .............................................................
 
 
 26
 ...................
 
 
 27
 * * *
 
 
 28
 The weight of the evidence indicates that both the product manufactured and the process used by American [Cable] produce results materially superior to those obtained by Pattridge. This change in a controlling fact makes the application of collateral estoppel inappropriate.
 
 
 29
 Id. at 168-69, 4 USPQ2d at 1079-80. The district court's finding that the facts here differed from the earlier case is not clearly erroneous.
 
 
 30
 3. In determining that the material facts in this case were not the same as those in Lang, the court relied upon the opinion in that case, refused to read the trial transcript and excluded from evidence in this case the deposition testimony of witnesses in the earlier trial. In reviewing the earlier opinion, the court noted:
 
 
 31
 In his opinion Judge Stagg writes that Pattridge's customers testified that "from ten to twenty percent of Mr. Pattridge's tendons had the [splitting] problem." Later, he suggests that twenty percent of the seams on the Pattridge product were bad. From this language one cannot conclude whether Judge Stagg found, as plaintiff suggests, that between ten and twenty percent of the total number of cables cut and used on a job contained small splits, or whether he found, as defendant suggests, that between ten and twenty percent of the total length of cable produced contained splits. However, considering Judge Stagg's opinion as a whole, it is plain that he considered the splitting of the Pattridge product to be a serious problem.
 
 
 32
 The amount of splitting was not established with any precision by the evidence in Judge Stagg's case. However, the evidence in this case demonstrates that the American product is greatly superior to the product Pattridge presented to Judge Stagg.
 
 
 33
 Id. at 168, 4 USPQ2d at 1079-80 (emphasis and brackets in original) (footnote and citations omitted). The parties disputed whether the controlling facts, i.e., the quality of the cable produced by American Cable, were the same. The court was justified in relying upon the prior opinion and in refusing to go behind that opinion, read the transcript, and redecide the controlling facts. As the court stated to the parties:
 
 
 34
 Gentlemen, that's an unreasonable imposition upon me to believe that I should read the entire trial transcript before Judge Stagg to pick and choose and select those things which you gentlemen believe to be relevant or admissable [sic] in this case.
 
 
 35
 When the trial transcript was received in evidence, the court expressly stated it would not read it. The court properly refused to redetermine the extent of the deficiencies in the product involved in the prior case. In excluding the depositions, the court noted that they were taken after the earlier trial and were, therefore, irrelevant. 660 F.Supp. at 168 n. 6, 4 USPQ2d at 1080 n. 6.
 
 
 36
 4. This case began as an action for a declaratory judgment brought in the Western District of Louisiana by Pattridge Post-Tension, Inc. and American Cable against Amicus and its predecessors in interest. Prior to the filing of that case, Amicus had filed a motion in the Eastern District of Louisiana to hold American Cable in contempt of a consent judgment entered into one year earlier. The district court for the Western District transferred the declaratory judgment action to the Eastern District. American Cable, which had unsuccessfully moved to retransfer the case, asserts that the transfer was improper.
 
 
 37
 In transferring this case to the Eastern District, the court in the Western District stated:
 
 
 38
 Considering that the plaintiffs [American Cable and Pattridge Post-Tension, Inc.] are incorporated outside Louisiana, plaintiffs do not reside in this state for purposes of venue.
 
 
 39
 Rather than dismiss for improper venue, the district court may, in the interest of justice, transfer this action to any district or division in which it could have been brought. 28 U.S.C. Sec. 1406(a).... [A] closely-related action is pending in the Eastern District of Louisiana, which has been stayed, awaiting resolution of the instant action. Considering that the underlying issues are closely analogous and that venue would properly lie in the district in which the claim arose, this action is hereby TRANSFERRED to the Eastern District of Louisiana.
 
 
 40
 Pattridge Post-Tension, Inc. v. Lang, No. 85-0032, slip op. at 3 (W.D.La. July 12, 1985). That ruling appears to accord with the law of the Fifth Circuit, whose precedents we follow on procedural matters not related to patent law. Power Controls, Corp. v. Hybrinetics, Inc., 806 F.2d 234, 237, 231 USPQ 774, 776 (Fed.Cir.1986). The Fifth Circuit has stated that "venue is proper under section 1391(c) ... in every district of the state in which a defendant corporation is incorporated." Davis v. Hill Eng'g, Inc., 549 F.2d 314, 323-24 (5th Cir.1977) (overruled on other issues by Culver v. Slater Boat Co., 688 F.2d 280 (5th Cir.1982) (en banc), cert. denied, 467 U.S. 1252 and 469 U.S. 819 (1984) ). The court has held, however, that "the venue provisions of 28 U.S.C. Sec. 1391(c) are not applicable to corporations suing as plaintiffs." Carter-Beveridge Drilling Co. v. Hughes, 323 F.2d 417, 418 (5th Cir.1963).
 
 
 41
 The Fifth Circuit thus appears to have adopted the rule that venue is proper for a corporate plaintiff in the state and district of incorporation. Since, as the District Court for the Western District pointed out, the plaintiff in the case before it was not incorporated in Louisiana, venue did not lie in that district. That district court was justified in transferring the case to the Eastern District (rather than dismissing it) since the venue problem did not exist in the Eastern District, where American Cable was a defendant, not a plaintiff.