**DIRECT MARKETING OF VIRGINIA, INC., Plaintiff,**

**v.**

**E. MISHAN & SONS, INC., and R.B.M., Ltd., Defendants.**

**No. 90 Civ. 5947 (RPP).**

United States District Court, S.D. New York.

Dec. 10, 1990.

Cooper & Dunham by Peter D. Murray, New York City, for plaintiff.

Wyatt, Gerber, Burke & Badie by Gerard F. Dunne, New York City, for defendant.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is a diversity action alleging copyright infringement and unfair competition. Plaintiff Direct Marketing of Virginia, Inc. ("DMV") has moved for a preliminary injunction pursuant to Fed.R.Civ.P. 65 enjoining defendant E. Mishan & Sons, Inc. ("Mishan") from the manufacture, importation, distribution, sale and display of its product and enjoining defendant's use of any trade dress confusingly similar to plaintiff's trade dress. For the reasons set forth below, plaintiff's motion is granted.

## BACKGROUND

Over the past eight months, a bona fide catfight has erupted between DMV and Mishan. DMV claims in this action, filed on September 14, 1990, that the watch face design on defendant's PLAYFUL KITTY WRIST WATCH, *see* Appendix B to this opinion, infringes the copyrighted design on DMV's CAT AND MOUSE WATCH, *see* Appendix A, in violation of 17 U.S.C. § 501(a). DMV also claims that Mishan is marketing its PLAYFUL KITTY WRIST WATCH in packaging so confusingly similar to plaintiff's packaging as to constitute trade dress infringement in violation of section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

It is undisputed that plaintiff DMV is the owner of two copyrights, Registration Nos. VA 406–808 and VA 415–270, both showing a pictorial design for a watch face.[1] The work underlying the first registration is a drawing of a short-haired, striped gray cat with green eyes, a white nose and chest and white paws. It is shown sitting face-forward facing the left side of the watch, looking downward, with a relatively short tail resting on the ground and its left paw slightly lifted. The cat is set against a green circular panel overlaying a gold background. There is a tiny stylized black mouse just outside the green panel. The mouse, shown from a top-view, is positioned to move around the watch face as the second hand.[2] Khubani Aff., Exh. 2; Reiss Dep. at 16–17 & Pl. Exh. 16.

Registration No. VA 415–270, issued to DMV on September 27, 1990, is for a derivative work entitled "Cat and Mouse II" based on the first copyrighted design and shows a new rendition of the cat. The new

---

1. Registration No. VA 406–808, entitled "Cat and Mouse," was originally issued on July 26, 1990 to R & R Recreation Products, Inc., not a party in this action. R & R assigned the copyright for value received to plaintiff in September 1990. Khubani Aff., Exh. 2; Defendant's Exhibit G (hereinafter Def. [or Pl.] Exh. __).

2. R & R Recreation Products has been selling a watch bearing this design and color scheme since the spring of 1989. Reiss Dep. at 5.

cat is a gray "tabby" cat,[3] only faintly striped, with long hair and whiskers, light blue eyes, and, like the original cat, has a white face, chest and paws. The artwork accompanying the second registration shows the cat in a sitting position but this time with a long upright tail, its right paw raised and its head tilted to the left. *See id.*, Exh. 3; Khubani Dep. at 26–27.

Plaintiff's CAT AND MOUSE WATCH is a novelty item retailing for about $20. The design on the watch face uses the rotating black mouse of the first copyright registration and the long-haired gray tabby cat of the second registration. The cat is pictured against a white background with a thin gold circle enclosing the cat and the mouse. *See* Appendix A.

The CAT AND MOUSE WATCH is sold in a flat pink cardboard box approximately 4″ × 5″ in size with a royal blue top border and, after July or August 1990, with a royal blue cardboard "lip" (or pegboard hook).[4] The box is "slack-filled," a term describing packaging in which most of the inner space is occupied by filler and not by the product itself. The words "CAT and MOUSE WATCH" appear in large royal blue lettering on the top half of the box and only the watch face is displayed through a clear plastic window in the lower right corner. A rectangular red inset or banner appearing above the window contains the words "AS SEEN ON TV." *See* Pl. Exhs. 23 & 24; Appendix A.

DMV markets the CAT AND MOUSE WATCH wholesale to retail stores and through mail order. DMV began to advertise its watch in April 1990 and filled its first orders in June 1990. DMV has spent approximately $2 million on print advertising beginning in April 1990, Tr. at 6 & 10,[5] as well as nearly $3 million on television advertising and several hundred thousand dollars on syndication pieces distributed with credit card billing statements, both beginning in June 1990. Tr. at 15; Khubani Dep. at 60; Pl. Exhs. 32 & 33. The typical print advertisements and the syndication piece are designed to look like the front panel of the CAT AND MOUSE WATCH package including display of the watch face in the lower right corner. *See, e.g.,* Def. Exhs. K & L; Khubani Dep. at 76. The television ads show only the watch itself but not the packaging design. DMV has sold approximately one million CAT AND MOUSE WATCHES, grossing nearly $20 million, since June 1990. Khubani Dep. at 84–85.

In July or August 1990, defendant E. Mishan & Sons, an importer and wholesaler of giftwares, housewares and toys, began selling a PLAYFUL KITTY WRIST WATCH. Mishan Dep. at 9. The watch face sports a short-haired, gray tabby cat with blue-green eyes, a white face, chest and paws but no whiskers. Mishan's cat, like plaintiff's cat, sits face-forward facing left although the Mishan cat has both paws on the ground and a long resting tail. It appears to be looking down toward its left shoulder. A tiny black mouse identical in size and design to plaintiff's mouse acts similarly as the second hand on the Mishan watch. The cat is pictured against a white background with a gold circle enclosing both the cat and the mouse. *See* Pl. Exhs. 1 & 2; Appendix B.

Mishan had commissioned artwork showing a partially obscured brown tabby cat in February 1989 for use on certain different Mishan products including a calendar and a serving tray. Mishan Aff. ¶ 4 & Exh. 2; Pl. Exh. 6. Edward Mishan, a partner of E. Mishan & Sons, testified at his deposition that in May 1990 he travelled to Hong

---

**3.** "[T]abby: ... 2a: a domestic cat having a gray or tawny coat striped and mottled with black and with the individual hairs variously banded and barred." *Webster's Third New International Dictionary* 2324 (3d ed.1986).

**4.** Plaintiff's package is also presented for retail sale in a self-standing cardboard display.

**5.** References to the transcript of the evidentiary hearing held before this Court on November 28, 1990 are designated "Tr. at ___."

Ninety-five percent of DMV's expenditures for print advertising paid for color ads. DMV's advertisements have appeared in national publications including *Big Beautiful Women, Cat Fancy, The Christian Science Monitor, The National Enquirer, Parade, Soap Opera Digest, TV Guide, USA Today* and *Woman's World.*

Kong to solicit suppliers for the Mishan watch. Mishan Dep. at 11. Mishan says he showed the suppliers advertisements for the green cat and mouse watch covered by Registration No. VA 406–808 being sold by R & R Recreation Products [6] to see if they could produce a similar watch but with Mishan's own artwork. Mishan testified that when he placed his first order on June 12, 1990 he instructed his supplier to use the previously commissioned Mishan cat artwork which he had supplied. *Id.* at 17–18. Mishan stated that at that time he also told the Hong Kong supplier to make the cat gray and to give it a tail, but denies that he gave any instructions as to the cat's eye color or the appearance of the mouse. *Id.* at 19 & 21. Mishan denied having seen plaintiff's advertisements prior to his trip to Hong Kong. *Id.* at 27–28.

Defendant's watch is sold in a slack-filled marbellized cardboard box approximately the same size and of the same shade of pink as plaintiff's. The words "Playful KITTY WRIST WATCH" appear in the same shade of royal blue lettering of large size near the center of the front panel and text in smaller black lettering appears elsewhere. The cardboard lip, when used, is of the same design as plaintiff's but is pink rather than royal blue. The box has the same size clear plastic window in the lower right corner to display only the watch face and a rectangular red inset above the window containing the words "AS NATIONALLY ADVERTISED." *See* Pl. Exhs. 1 & 2; Appendix B.

Original artwork for the PLAYFUL KITTY WRIST WATCH package dated July 10, 1990 indicated that the lettering was to be white, that the window was to run the length of the box on the right side and did not anywhere show a red banner. Pl. Exh. 9.[7] Edward Mishan testified at his deposition that the white lettering was not readable on samples so the royal blue was sub-

stituted and that the window was reduced and placed in the lower right corner in order to accommodate the particular blister tray Mishan's supplier had available. Mishan Dep. at 34–35.

Mishan testified that he instructed the supplier to add the red insignia containing the words "AS NATIONALLY ADVERTISED" "because most of our products now are starting to bear that logo" but denies instructing the supplier where to position the inset on the box. *Id.* at 42. Mishan stated, however, that his company has not done any national advertising for the PLAYFUL KITTY WRIST WATCH although it has promoted the product through samples and telephone sales. *See id.* at 53.

Edward Mishan admitted that he had obtained a color print advertisement for DMV's CAT AND MOUSE WATCH showing the watch face design as early as June 25, 1990 and that he "may" have had some samples and packages of the CAT AND MOUSE WATCH in July 1990. Mishan Dep. at 48.

Mishan has sold approximately 200,000 PLAYFUL KITTY WRIST WATCHES to date. *Id.* at 46.

Robert Reiss, president of R & R Recreation Products, Inc., a company which develops and markets consumer products, testified at his deposition that although he was purchasing CAT AND MOUSE WATCHES from DMV to supply to retailers, he considered buying PLAYFUL KITTY WRIST WATCHES from Mishan in case the supply of DMV watches were to run out. Reiss stated:

> I thought [the boxes] were similar. If I couldn't deliver this one [DMV's CAT AND MOUSE WATCH], I felt I would have no problem getting the customer to

---

6. *See* supra note 2.

7. Although the artwork did not indicate the color or of the background, Mishan testified that he told his supplier to "take our marbellized design that we used for our other cat products and that we have been using to continue to grow our line for women-type products," Mishan Dep. at 30, and to make the same artwork as the supplier had made for Mishan's KITTY SILHOUETTE MEMO MAGNETS. *Id.* The magnet package is somewhat smaller and has a pink marbellized background with turquoise blue lettering. *See* Pl. Exh. 10.

accept this one [Mishan's PLAYFUL KITTY WRIST WATCH].

Reiss Dep. at 53.

Sometime in October 1990, a customer in Chicago, Illinois mistakenly sent an order form for the Mishan watch in an envelope addressed to "Cat and Mouse Watch" to the address given in DMV's television advertisements. Tr. at 26; Pl. Exh. 35. The customer sent the order to DMV even though the order form stated "MAIL TO:" and gave the address of Mishan's distributor, R.B.M. Ltd. See Pl. Exh. 35.

## DISCUSSION

It is well-settled in this Circuit that in order to obtain a preliminary injunction, a party must show (1) irreparable harm and (2) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in that party's favor. See Jackson Dairy, Inc. v. H.P. Hood & Sons, 596 F.2d 70, 72 (2d Cir.1979).

■ Irreparable harm may ordinarily be presumed in copyright and trade dress infringement cases. See Hasbro Bradley, Inc. v. Sparkle Toys, Inc., 780 F.2d 189, 192 (2d Cir.1985) (copyright infringement); Maidenform Inc. v. Munsingwear Inc., 195 U.S.P.Q. 297, 302 (S.D.N.Y.1977) (trade dress infringement). The issue before the Court is whether DMV has satisfied the second prong of the Jackson Dairy test for either of its claims.

### 1. Copyright Infringement

DMV has demonstrated a likelihood of success by offering proof of the two elements of a claim for copyright infringement: (1) ownership of a valid copyright and (2) unauthorized copying by defendant.

■ Defendants do not dispute the ownership or validity of the copyrights in question.[8] It is axiomatic that copyright protection extends only to the expression of an idea but not to the idea itself. See Reyher v. Children's Television Workshop, 533 F.2d 87, 90 (2d Cir.), cert. denied, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). The idea of designing a watch face to show a full-bodied cat which appears to "see" a mouse as the mouse circles the cat in the manner of a second hand is an unprotectible idea. However, plaintiff's expression of that idea—using "America's favorite cat, the Tabby" in a sitting position facing to the left with a stylized rather than realistic rendering of a mouse—is, in this Court's view, protectible expression.

■ Where direct evidence of copying is unavailable, plaintiff in a copyright infringement action can prove copying indirectly by proving access and substantial similarity. 3 M. Nimmer & D. Nimmer, Nimmer on Copyright § 13.01[B] (1990). Access may be inferred when the defendant has had a "reasonable opportunity to view" plaintiff's work before creating his own work. See Gaste v. Kaiserman, 863 F.2d 1061, 1067 (2d Cir.1988).

■ Despite proof of access and substantial similarity, the trier of fact may find no copying if it believes defendant's evidence of independent creation. 3 M. Nimmer & D. Nimmer, supra, at 13–9. However, if the parties' works are so strikingly similar as to preclude the possibility of independent creation, copying may be proved by substantial similarity alone without a showing of access. See Gaste, 863 F.2d at 1067; Arnstein v. Porter, 154 F.2d 464, 468 (2d Cir.1946).

■ This is the rare copyright infringement case in which there is some direct

---

8. Defendant raised the issue of copyright notice at the hearing. Under the Berne Convention Implementation Act of 1988, Pub.L. No. 100–568, 102 Stat. 2853 (1988), works first published after March 1, 1989 need not bear a notice of copyright as a precondition to copyright protection. This rule applies to plaintiff's CAT AND MOUSE WATCH design which was first published in 1990.

Registration No. VA 406–808 indicates that the original cat and mouse design was first published on the R & R Recreation Products watches on June 11, 1989. Because the R & R watch bore the notice "(c) R & R," see Pl. Exh. 16, Mishan can hardly claim to be an innocent infringer.

evidence of copying. Edward Mishan testified that he supplied his Hong Kong manufacturer with advertisements showing a watch bearing the copyrighted design of Registration No. VA 406–808. Although Mishan claims to have instructed the manufacturer to use Mishan's cat artwork, he offers no credible explanation for switching to the same colors as used on DMV's CAT AND MOUSE WATCH or for using an identical background and mouse.

DMV also proved copying indirectly. Mishan had a reasonable opportunity to view the design on the CAT AND MOUSE WATCH beginning with DMV's print advertising in April 1990 and its television advertising prior to June 12, 1990.

The Court finds defendant's design to be substantially similar to the copyrighted design belonging to plaintiff. The test for substantial similarity is "whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Ideal Toy Corp. v. Fab–Lu Ltd.*, 360 F.2d 1021, 1022 (2d Cir.1966). Copying need not be of every detail, *see Comptone Co. v. Rayex Corp.*, 251 F.2d 487, 488 (2d Cir.1958), as long as "the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal [of the two works] as the same." *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir. 1960).

The average lay observer would find substantial similarity between the two cat and mouse designs, the DMV and MISHAN design, due to the same color and general appearance, overall position on the watch face and the facial expression of the cat, the shape and placement of the mouse and the identical color of the background. The ordinary observer would be disposed to overlook minor differences in the position of the cats' paws, tail or the angle of the head.

Accordingly, because DMV has shown a likelihood of success on its copyright in-

fringement claim, it is entitled to preliminary injunctive relief.

## 2. Trade Dress Infringement [9]

The unregistered trade dress of a product may be protected under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), if it is nonfunctional and has acquired secondary meaning in the marketplace. *See Stormy Clime Ltd. v. Progroup, Inc.*, 809 F.2d 971, 974 (2d Cir.1987); *Time Inc. Magazine v. Globe Communications Corp.*, 712 F.Supp. 1103, 1106–07 (S.D.N.Y.1989). The trade dress of a product has sufficient secondary meaning if the plaintiff establishes that the purchasing public associates that dress with the goods from a single producer or source rather than just with the product itself. *See LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 78 (2d Cir.1985). A claim for trade dress infringement then arises when the plaintiff alleges that a competitor's packaging is so similar as to create a likelihood of consumer confusion about the product's source. *Time Inc. Magazine*, 712 F.Supp. at 1109.

Secondary meaning for a particular trade dress is often proved through consumer survey evidence. *See Papercutter, Inc. v. Fay's Drug Co.*, 900 F.2d 558, 564 (2d Cir.1990). However, evidence of plaintiff's extensive advertising and sales as well as evidence that the defendant attempted to capitalize on the trade dress of plaintiff's product is also highly probative of secondary meaning. *See id.; RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1059–60 (2d Cir.1979). In this case, DMV has spent over $5 million in advertising for its CAT AND MOUSE WATCH and has generated approximately $20 million in sales in the course of only five months. Mishan's near slavish reproduction of each and every feature of plaintiff's trade dress, and especially its use of a similar red banner reading "AS NATIONALLY ADVERTISED" when Mishan does no advertising of any kind, is strong evidence of intentional copying. The Court rejects defendant's claim

---

**9.** It was stipulated at the November 28, 1990 hearing that DMV was withdrawing its trade dress infringement claim against R.B.M. Ltd. because R.B.M. sells the Mishan watch in a bubble pack.

that it did not copy but instead used pre-existing trade dress it had used on other Mishan products.

DMV has demonstrated adequately that the appropriated features of its trade dress are not functional. Although the use of a transparent packaging material to enable the consumer to view the product has been held to be functional, *see Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 240 (Fed.Cir.1986) (molded plastic "clam shell" package), the other elements of plaintiff's trade dress viewed as a whole, including but not limited to the color and placement of the product name, the background color, the size and placement of the window and the "AS SEEN ON TV" banner, are plainly aesthetic rather than functional. It is the unique collocation of words, colors and designs on the CAT AND MOUSE WATCH package that is protected from appropriation.

 DMV has also established a likelihood of confusion between its trade dress and Mishan's. The test of consumer confusion is not whether the products can be differentiated when subjected to a side-by-side comparison, but rather whether they create the same general overall impression. *See Harold F. Ritchie, Inc. v. Chesebrough–Pond's, Inc.*, 281 F.2d 755, 762 (2d Cir.1960). All seven factors for likelihood of confusion, as set forth in *RJR Foods, Inc. v. White Rock Corp.*, 603 F.2d 1058, 1061 (2d Cir.1979), weigh in plaintiff's favor in this action. Plaintiff has demonstrated (1) the strength of its trade dress among consumers based on its $5 million advertising budget and its $20 million in gross sales; (2) that the products are similar; (3) that the trade dress is similar; (4) that there is no credible explanation for the similarity of Mishan's packaging but that it was Mishan's intent to copy and that Mishan's use of the words "AS NATIONALLY ADVERTISED" when only plaintiff's product had been advertised is not only misleading but demonstrates a clear attempt to palm off the product as plaintiff's and to create confusion between them; (5) that the products are in direct competition; and (6) that the low cost ($ 10–20) and novelty nature of the watches indicate that consumers will make swift, unpondered purchasing decisions. In addition, there is evidence (7) of at least one instance of actual confusion. Accordingly, plaintiff is entitled to preliminary injunctive relief on its trade dress infringement claim.

Finally, it is worth noting that the balance of hardship tips decidedly in plaintiff's favor. Cat and mouse watches are a novelty and gift item and the holiday selling season is now in full swing. The harm that would result from not enjoining Mishan's sale (at half the price) of a product bearing a substantially similar watch face design and sold in a confusingly similar package to plaintiff's CAT AND MOUSE WATCH outweighs the harm to Mishan in being enjoined pending trial on the merits.

IT IS SO ORDERED.

Appendix A
Plaintiff's Product

Appendix B
Defendant's Product

## A NEW PRECISION TIMEPIECE FOR CAT LOVERS!

Playful
KITTY
WRIST
WATCH

AS NATIONALLY ADVERTISED

Watch the KITTY try to catch the animated MOUSE every 60 seconds!

GOLDTONE CASE with matching GREY fashion BAND. One size fits all!

