**FIVE STAR MANUFACTURING, INC., Plaintiff,**

v.

**RAMP LITE MANUFACTURING, INC., Defendant.**

**No. Civ.A. 97–2430–GTV.**

United States District Court, D. Kansas.

July 29, 1998.

Richard P. Stitt, Spencer, Fane, Britt & Browne, Kansas City, MO, J. Charles Droege, Overland Park, KS, for Five Star Manufacturing, Inc., plaintiff.

Charles E. Fowler, III, Andrews & Fowler, Chtd., Leawood, KS, Seth M. Nehrbass, Pravel, Hewitt, Kimball & Krieger, Metairie, LA, for Ramp Lite Manufacturing, Inc., defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this patent infringement action alleging that defendant manufactures and sells ramps that infringe plaintiff's design patent for an arched lawnmower ramp. The case is before the court on plaintiff's motion (Doc. 2) for a preliminary injunction. The parties presented evidence at a hearing on plaintiff's motion on November 24, 1997. For the reasons set forth below, the motion is denied.

### I. FINDINGS OF FACT

Pursuant to Fed.R.Civ.P. 52(a), the court makes the following findings of fact and conclusions of law.

1. Plaintiff Five Star Manufacturing, Inc. has been manufacturing aluminum loading ramps since 1986.

2. Plaintiff owns a design patent, U.S. Design Patent No. 331,305, for an arched lawnmower ramp. The design drawings depict an arch that reduces the angle of incline

of the ramp as it approaches the upper end of the ramp. *See* Figures 1–6. Two longitudinal beams span the length of each ramp and define the arch of the ramp. Each beam consists of two rectangular bars welded together lengthwise. A center longitudinal beam consisting of only one rectangular bar also runs the length of the ramp. Cylindrical cross bars are welded on top of the ramp across the three longitudinal beams intermittently throughout the length of the ramp and fully extending across the width of the ramp. The upper end of the ramp contains three flat extensions the width of the longitudinal beams connected to the top of each beam and extending out several inches from the end of the beams.

3. Lonnie D. Adams, a co-inventor of the patented design, expended substantial time and resources in developing the patented design. Adams Distributing Company, which sells plaintiff's ramps manufactured under the design patent, spent over $50,000 on advertising for the ramps. Neither Lonnie D. Adams nor Adams Distributing is a plaintiff in this case. Nor is Adams an employee of plaintiff.

4. Plaintiff attempted to obtain a utility patent on the arched ramp but abandoned such pursuit after it realized prior art would preclude it from receiving a utility patent.

5. Defendant Ramp Lite Manufacturing, Inc. has been manufacturing and selling aluminum ramps since 1996. Defendant sells its ramps by phone and through dealers that it solicits to sell the ramps. At least three dealers in Kansas sell defendant's ramps and advertise the ramps by brochure.

6. Defendant manufactures a ramp containing many of the features included in plaintiff's design patent drawings. *See* Figure 7. The arch of the ramp is almost identical to the arch in the drawings. The ramp has two rectangular outside longitudinal beams. Cylindrical cross bars are similarly spaced throughout the length of the ramp. The ramp also has flat metal extensions connected to the upper end of each longitudinal beam.

7. Plaintiff asserts that the design patent protects the following features of the ramp design: the arch, the longitudinal beams, the cross bars, and the extensions at the top end.

8. The patented design and the accused ramp differ in the following respects: the cross bars in the patented design are across the top of the ramp, while the cross bars of the accused ramp are underneath the top of the longitudinal beams; the longitudinal beams in the patented design are two smaller beams welded one on top of the other, while the longitudinal beams of the accused ramp are each one single piece of metal; the patented design has only one center longitudinal beam, while the accused ramp has two center longitudinal beams.

9. The purpose of the arch in the ramp design is to reduce the angle of the incline as a lawnmower approaches the surface on which it is loaded. The specific arch is necessary to provide clearance in the loading of Snapper brand lawnmowers. The arch also provides strength for the ramp. The longitudinal bars are vertically longer than they are wide to supply support for the weight on the ramp. The longitudinal bars are rectangular to provide a welding area on which to connect the cylindrical cross bars. The cross bars are cylindrical to provide the most strength with the least weight, and to allow the loaded vehicle to get traction in all weather conditions. The cross bars are spaced to prevent the wheels of the loaded vehicle from slipping between them. The extensions from the upper end of the ramp are provided to allow the ramp to hang on the edge of the loading surface and to provide a flat level surface between the ramp and the loading area.

10. Plaintiff's witnesses testified that the following alternative ramp designs are available: a long, straight ramp or a ramp with a bend instead of an arch. Neither, however, are feasible options. A straight ramp long enough to provide clearance for lawnmowers would violate freight regulations. The ramp with a bend would not assist in the loading of Snapper lawnmowers because it would provide insufficient clearance for the lawnmower to roll up the ramp without striking either the ground or the ramp. Plaintiff's witnesses also suggested alternatives to the patented design including a forklift or several persons lifting the lawnmower.

11. The court finds that the patented design is functional. Although plaintiff argues that the choice of design was made for aesthetic, non-functional purposes, the evidence clearly discloses that the arch, the longitudinal beams, the cross bars, and the flat extensions are all functional aspects—going far beyond ornamental. Moreover, plaintiff has failed to show that any alternative ramp designs could fulfill the same functions that the patented design fulfills.

12. Plaintiff believes another manufacturer is also infringing the design patent. Plaintiff, however, has declined to sue the other manufacturer for patent infringement. In exchange, the allegedly infringing manufacturer agreed not to sue plaintiff for infringement of another patent.

## II. CONCLUSIONS OF LAW

The district court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1338. Venue is proper in this district pursuant to 28 U.S.C. § 1400(b) because defendant allegedly infringed plaintiff's design patent in this district and defendant has a regular and established place of business in this district.

The court has discretion to grant or deny a motion for a preliminary injunction. *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed.Cir.1996). Four factors are relevant to a preliminary injunction analysis:

(1) a reasonable likelihood of success on the merits;

(2) irreparable harm if the injunction were denied;

(3) the balance of hardships between plaintiff and defendant; and

(4) the impact of the injunction on the public interest.

*Id.*

### A. Reasonable Likelihood of Success on the Merits

■ Initially, plaintiff must show a reasonable likelihood of success on the merits of its patent infringement claim. *Id.* The two necessary elements to the patent infringement claim are (1) the validity of the patent, and (2) the infringement of the patent. *Id.*

### 1. Validity

■ Under 35 U.S.C. § 171, "whoever invents any new, original and *ornamental* design for an article of manufacture may obtain a patent therefor." (emphasis added). Patent validity is presumed under the patent statutes. *See* 35 U.S.C. § 282. Defendant thus bears the burden to prove invalidity by clear and convincing evidence. *See L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed.Cir.1993). If defendant makes a strong and clear showing of invalidity, plaintiff must provide countervailing evidence to establish validity. *Power Controls Corp. v. Hybrinetics, Inc.*, 806 F.2d 234, 239 (Fed.Cir.1986). Defendant argues that the design patent is invalid because it is dictated purely by the function of the ramp. The court agrees.

■ "[I]f the design claimed in a design patent is dictated solely by the function of the article of manufacture, the patent is invalid because the design is not ornamental." *Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed.Cir.1996) (citing *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989)). "The function of the article itself must not be confused with 'functionality' of the design of the article." *Hupp v. Siroflex of America, Inc.*, 122 F.3d 1456, 1460 (Fed. Cir.1997). The court must determine "whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes." *Id.* If there are multiple ways to achieve the same functions that are achieved by the design patent, the patented design is more likely to serve a primarily ornamental purpose. *L.A. Gear*, 988 F.2d at 1123.

In the *Hybrinetics* case, the Federal Circuit vacated a preliminary injunction because the plaintiff had failed to show a reasonable likelihood of success on the issue of patent validity. 806 F.2d at 240. The plaintiff claimed infringement of a design patent for "a plastic 'clam shell' type of package used to encase an electrical rotary dimmer switch." *Id.* at 235. The defendant, however, relied on the deposition of the design inventor,

which "inevitably discussed each feature's functional nature." *Id.* at 239. The Federal Circuit found that such evidence constituted a strong and clear showing of functionality. *Id.* Conversely, the plaintiff offered no countervailing evidence that established the ornamental nature of the design. *Id.*

Here, the primary inventor, James D. Woodward, testified regarding each feature's purely functional purpose. Under *Hybrinetics,* such evidence alone is sufficient to establish a strong and clear showing of functionality. Moreover, although plaintiff's witnesses broadly asserted that the ramp was designed to create a unique or "signature" look for the company, both acknowledged that each feature of the design served a functional purpose. Thus, defendant made a strong and clear showing of functionality.

 Plaintiff's witnesses suggested that other alternatives existed to the patented design. "The presence of alternative designs may or may not assist in determining whether the challenged design can overcome a functionality challenge." *Berry Sterling Corp. v. Pescor Plastics, Inc.,* 122 F.3d 1452, 1456 (Fed.Cir.1997). Plaintiff's witnesses suggested that four strong men or a fork lift could be used to place a lawnmower in a pick-up truck. It is alternative designs for the ramp that matter, not alternative means to achieve the purpose for which the ramp was built. *See Best Lock Corp.,* 94 F.3d at 1566. Plaintiff's witnesses also suggested that defendant could manufacture a much longer and straighter ramp or a ramp with a bend instead of an arch. A ramp long enough to provide clearance for the Snapper lawnmower, however, would violate freight regulations. A ramp with a bend instead of an arch would not provide sufficient clearance to load Snapper lawnmowers. The patented design enables Snapper lawnmowers to be loaded. Thus, plaintiff did not suggest any alternative designs that would allow the ramp to fulfill the same functions that the patented design achieves. *See L.A. Gear,* 988 F.2d at 1123. Conversely, defendant offered evidence that the design at issue is the only ramp design that could fulfill its intended purpose. Accordingly, plaintiff failed to show a reasonable likelihood of success on the issue of patent validity.

### 2. Infringement

Even if the court considered the overall design primarily ornamental, plaintiff must establish a reasonable likelihood of success on the infringement element of its patent infringement claim. "Whether a design patent is infringed is determined by first construing the claim to the design, when appropriate, and then comparing it to the design of the accused device." *Oddzon Prods., Inc. v. Just Toys, Inc.,* 122 F.3d 1396, 1404 (Fed.Cir. 1997). The functional/ornamental distinction is also relevant to determining infringement. *See id.* 122 F.3d at 1404–05. "Design patents have almost no scope." *In re Mann,* 861 F.2d 1581, 1582 (Fed.Cir.1988). "A design patent only protects the novel, ornamental features of the patented design. Where a design contains both functional and non-functional elements, the scope of the claim must be construed in order to identify the nonfunctional aspects of the design as shown in the patent." *Oddzon Prods., Inc.,* 122 F.3d at 1405.

██ Plaintiff summarily argues that defendant infringes the design patent because defendant is selling an arched ramp substantially similar to the patented design, which creates a deception to the ordinary observer. Although the ramps may appear substantially similar, "the patentee must show that the perceived similarity is based on the ornamental features of the design." *Id.* As previously stated, all features of the patented design are functional. Plaintiff has failed to indicate any features which were included for ornamental purposes. Accordingly, plaintiff has failed to show a reasonable likelihood of success on the infringement issue.

### B. Other Factors

 Plaintiff has failed to offer any relevant evidence relating to irreparable harm, the balance of hardships, or the public interest. If plaintiff makes a strong showing of reasonable likelihood of success on the merits, the court must grant a rebuttable presumption of irreparable harm. *Bridwell,* 103 F.3d at 973. The court has already determined that plaintiff has failed to show a reasonable likelihood of success. Thus, the presumption is inapplicable. Plaintiff did not submit any evidence of actual harm. More-

over, plaintiff admits that it has declined to sue another manufacturer that plaintiff believes is infringing the patent at issue in this case. Plaintiff has failed to establish that it will be irreparably harmed by defendant's conduct.

The court need not consider the balance of hardships or the public interest if plaintiff fails to establish either of the first two factors. *Id.* at 973–74. Nevertheless, the court will briefly discuss the remaining factors. Although plaintiff offered evidence that Lonnie D. Adams invested time and resources into developing the design, Adams is not the plaintiff nor an employee of the plaintiff in this lawsuit. Moreover, the evidence that Adams Distributing expended over $50,000 on advertising is not relevant to the balance of hardships analysis because Adams Distributing is not the plaintiff in this action. Plaintiff offered no evidence that plaintiff itself has suffered hardship. Although the hardship of Adams and Adams Distributing may be relevant to the public interest analysis, the evidence of one person and one company's past expenses incurred is insufficient to establish that the public interest favors granting a preliminary injunction.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion (Doc. 2) for a preliminary injunction is denied.

Copies of this order shall be mailed to counsel of record for the parties.

**IT IS SO ORDERED.**

APPENDIX

Figure 1

Figure 2

Figure 3

Figure 4

Figure 5

Figure 6

**Figure 7**