Jack T. HUPP and Walkmaker, Inc., Plaintiffs–Appellants,

v.

SIROFLEX OF AMERICA, INC., Defendant/Cross–Appellant.

Nos. 95–1268, 95–1289.

United States Court of Appeals, Federal Circuit.

Sept. 4, 1997.

Nick A. Nichols, Jr., Gunn & Associates, P.C., Houston, TX, argued, for plaintiffs-appellants.

William C. Norvell, Jr., Beirne, Maynard & Parsons, L.L.P., Houston, TX, argued, for defendant/cross-appellant.

Before NEWMAN, Circuit Judge, SMITH, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Jack T. Hupp and Walkmaker, Inc. (collectively "Hupp") sued Siroflex of America, Inc. in the United States District Court for the Southern District of Texas, for infringement of United States Design Patent No. 342,528 (the D'528 patent) and for trade dress infringement. The jury answered special interrogatories on all disputed issues, and in accordance with these findings the court entered judgment that the D'528 patent is invalid and not infringed, that the patent is unenforceable due to inequitable conduct in the Patent and Trademark Office, and that Hupp's trade dress is functional, not inherently distinctive, and not infringed. The district court entered judgment accordingly,[1] and Hupp appeals. Siroflex cross-appeals the district court's decision not to award it the amount of the injunction bond.

We affirm the judgment of non-infringement of the patent and the trade dress, and the ruling concerning the injunction bond. We reverse the judgment of patent invalidity and unenforceability.

## I

### PATENT VALIDITY

Hupp's patent is for the design of a mold that is used to make a simulated stone pathway by molding concrete. The ribs of the mold fix the shapes of the concrete stones and the spaces between the stones. Following are two of Hupp's mold designs as shown in the D'528 patent:

---

1. *Hupp v. Siroflex of America, Inc.*, No. G–94–007 (S.D.Tex. Feb. 8, 1995) (Final Judgment); *Hupp v. Siroflex of America, Inc.*, No. G–94–007 (S.D.Tex. Feb. 17, 1995) (Order); *Hupp v. Siroflex of America, Inc.*, No. G–94–007 (S.D.Tex. Feb. 22, 1995) (Order).

Several grounds of patent invalidity were presented by Siroflex at trial. The judgment of invalidity must be affirmed if there was substantial evidence, on the record as a whole, to support the findings of fact needed to sustain the jury verdict, *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 982, 10 USPQ2d 1338, 1341 (Fed.Cir.1989); *Shatterproof Glass Corp. v. Libbey–Owens Ford Co.*, 758 F.2d 613, 225 USPQ 634 (Fed.Cir.1985), absent reversible error at trial, *see Magnivision Inc. v. Bonneau Co.*, 115 F.3d 956, 961, 42 USPQ2d 1925, 1930 (Fed.Cir.1997).

### A. Ornamental v. Functional Design

To be patentable a design must be for an article of manufacture, must meet the criteria of being new, original, and ornamental, and must satisfy the other relevant requirements of Title 35:

**35 U.S.C. § 171.** Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, subject to the conditions and requirements of this title.

The provisions of this title relating to patents for inventions shall apply to patents for designs, except as otherwise provided.

A design or shape that is entirely functional, without ornamental or decorative aspect, does not meet the statutory criteria of a design patent. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123, 25 USPQ2d 1913, 1917 (Fed.Cir.1993). *See Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188–89, 5 USPQ2d 1625, 1627 (Fed.Cir.1988) (the design patent protects the non-functional aspects of a useful article); *In re Rosen*, 673 F.2d 388, 391, 213 USPQ 347, 350 (CCPA 1982).

Although the design patent is directed to the ornamental aspect of a useful article, that the design of a particular article is related to the article's use may not defeat patentability. When the design is primarily ornamental, although it also serves a utilitarian purpose,

this design patent condition is met. As explained in *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148, 109 S.Ct. 971, 976, 103 L.Ed.2d 118, 9 USPQ2d 1847, 1851 (1989), to qualify for design patent protection, a design must have an ornamental appearance that is not dictated by function alone. The jury found that the D'528 design was "not ornamental." Hupp argues that this finding was not supported by substantial evidence, stating that there was no evidence that this mold design was dictated by function alone. *See also L.A. Gear v. Thom McAn*, 988 F.2d at 1123, 25 USPQ2d at 1917 ("An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is 'dictated by' the use or purpose of the article.") (quoting *In re Carletti*, 51 C.C.P.A. 1094, 328 F.2d 1020, 1022, 140 USPQ 653, 654 (1964)).

Siroflex stated at trial, and repeats on appeal, that because the D'528 mold served a function the design was primarily functional and can not be ornamental. That is incorrect, for the fact that the article of manufacture serves a function is a prerequisite of design patentability, not a defeat thereof. The function of the article itself must not be confused with "functionality" of the design of the article. *Avia Group Int'l, Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988) (distinguishing the functionality of the feature from the design of the feature).

In determining whether the statutory requirement is met that the design is "ornamental," it is relevant whether functional considerations demand only this particular design or whether other designs could be used, such that the choice of design is made for primarily aesthetic, non-functional purposes. *L.A. Gear v. Thom McAn*, 988 F.2d at 1123–24, 25 USPQ2d at 1917 ("When there are several ways to achieve the function of an article of manufacture, the design of the article is more likely to serve a primarily ornamental purpose."); *In re Carletti*, 51

C.C.P.A. 1094, 328 F.2d 1020, 1022, 140 USPQ 653, 654 (1964) (determining whether the appearance is "directed by" the use of the article).

The mold whose design is the subject of the D'528 patent serves the function of producing a simulated rock walkway, while the particular design of the mold is primarily ornamental. As the prior art shows, a variety of structures and tools, including molds, have been used to make concrete shapes, including walkways, of various designs. Since other designs have the same general use, and the aesthetic characteristics of Hupp's design are not dictated by the function of the article, Hupp's design is primarily ornamental within the meaning of the design patent law. There was no significant contrary evidence. Indeed, two of Siroflex's witnesses testified that the mold design was ornamental. On the correct view of the law, there was not substantial evidence to support the finding that the patented design was not ornamental. Since that finding must be reversed, the judgment of invalidity can not be supported on this ground.

### B. Anticipation

■ The jury answered "yes" to an interrogatory asking whether the claimed design was described in a printed publication or in public use or on sale more than a year before the patent filing date. The interrogatory did not distinguish among these three issues, each of which is a bar to a valid patent. The record shows that the printed publication part of this interrogatory was based on a newspaper advertisement for a ceramic floor tile structure whose overall design was similar, but not identical, to one of Hupp's mold designs, while the on-sale issue may have been based on either the ceramic floor tile advertisement or on Hupp's submission of his idea to an invention agency, as discussed *post*.

In determining whether a design patent is invalid based on a description in a printed publication, 35 U.S.C. § 102(a), the factual inquiry is the same as that which determines anticipation by prior publication of the subject matter of a utility patent; *see* 35 U.S.C. § 171. The publication must show the same subject matter as that of the patent, and must be identical in all material respects. The ceramic floor tile advertised in the Houston newspaper is not identical to Hupp's mold for a concrete walkway, and the record shows no other publication on which the jury might have relied. Thus the jury answer to this interrogatory can not be supported on the ground that Hupp's patented subject matter is anticipated by the ceramic floor tile or its advertisement.

### C. On Sale

■ Turning to the "on sale" component of the same interrogatory, evidence was presented concerning Hupp's submission to the Invention Submission Corporation of sketches of various proposed mold designs, some of which appear in the D'528 patent. Although it was debated at trial whether and what was submitted and when, the jury could have found, as a matter of credibility, that the submission was made and that this event took place more than a year before the patent's filing date.

The jury instructions described the on-sale bar as arising from "an offer for sale of the design of the design patent." However, organizations that invite inventors to submit their ideas in order to obtain patent services and assistance in development and marketing are not ordinarily "customers" whereby contact with such an organization raises the on-sale bar. An inventor's quest for aid and advice in developing and patenting an invention is not an on-sale event as contemplated by 35 U.S.C. § 102(b). The jury's "yes" can not be supported on this ground.

There was not substantial evidence to support a verdict of invalidity based on publication, public use (there was no evidence relating to any purported public use), or on-sale, more than a year before Hupp's patent application filing date. The jury's answer to this interrogatory can not stand, and thus the judgment of invalidity can not be based thereon.

### D. Obviousness

■■ The jury held the D'528 patent to be invalid for obviousness. We review whether there was substantial evidence whereby a reasonable jury could have found the facts necessary to support this verdict. Invalidity based on obviousness of a patented design is determined on factual criteria similar to those that have been developed as analytical tools for reviewing the validity of a utility patent under § 103, that is, on application of the *Graham* factors. *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545, 148 USPQ 459 (1966); *L.A. Gear v. Thom McAn*, 988 F.2d at 1124, 25 USPQ2d at 1917. The determination of the ultimate question of obviousness is made from the viewpoint of a person of ordinary skill in the field of the patented design. *Litton Systems, Inc. v. Whirlpool Corp.*, 728 F.2d 1423, 1443, 221 USPQ 97, 109 (Fed.Cir. 1984); *In re Nalbandian*, 661 F.2d 1214, 1216, 211 USPQ 782, 784 (CCPA 1981).

■ The scope of the prior art is not the universe of abstract design and artistic creativity, but designs of the same article of manufacture or of articles sufficiently similar that a person of ordinary skill would look to such articles for their designs. The prior art included United States Patent No. 4,354,773 to Noack, a utility patent that shows a mold for making simulated stone outdoor walkways. The Noack mold is the same kind of article of manufacture, and has the same use as that of Hupp—but as shown in the Noack patent it is of a different design. Other references show a variety of devices for shaping concrete into stone-like shapes, including molds, tools, and templates. None of these references shows a design similar to any of the mold shapes of the D'528 patent. However, a design of overall shapes quite similar to the shapes of one of Hupp's mold designs was shown in the ceramic tile floor advertisement discussed *ante*. In that product, ceramic tiles of varying colors and shapes are arranged on a fabric backing to produce sections that fit together to make a tile floor. The illustration does not show a mold or a molded product or simulated concrete stones in a walkway, but a floor tile structure.

■ The jury found that the ceramic tile floor was a "primary reference," defined in the jury instructions as "having design characteristics which are 'basically the same' as the claimed design." The requirement for a "primary reference" is explained in *In re Rosen*, 673 F.2d at 391, 213 USPQ at 350, as meaning that "there must be a reference, a something in existence, the design characteristics of which are basically the same as the claimed design in order to support a holding of obviousness." The correct application of this analytic approach is to ascertain whether, upon application of the *Graham* factors to the invention viewed as a whole, the same or a substantially similar article of manufacture is known to have design characteristics of which the design of the article as shown in the claim is an obvious variant. *Avia*, 853 F.2d at 1563–64, 7 USPQ2d at 1553–54. Obviousness, in turn, is determined by ascertaining whether the applicable prior art contains any suggestion or motivation for making the modifications in the design of the prior art article in order to produce the claimed design. *In re Borden*, 90 F.3d 1570, 1574, 39 USPQ2d 1524, 1526 (Fed.Cir.1996) ("In order for secondary references to be considered, however, there must be some suggestion in the prior art to modify the basic design with features from the secondary references.") (citing *L.A. Gear*, 988 F.2d at 1124, 25 USPQ2d at 1917 and *In re Rosen*, 673 F.2d at 391, 213 USPQ at 350.)

Hupp argues that a mold design for a concrete walkway of simulated stones is sufficiently different from a flooring of ceramic tiles on a fiber backing that the tile flooring can not be a primary reference. Hupp also argues that even if a reasonable jury could have viewed the ceramic flooring as a primary reference, there is no teaching or suggestion in the prior art whereby one of ordinary skill would look to flooring designs in designing a mold suitable for making a sim-

ulated stone walkway out of concrete. Hupp argues that any similarity of stone shapes in the final products does not make obvious his design of a mold for a concrete walkway. We agree with Hupp that this step is taken only with the hindsight knowledge of Hupp's product. We have been directed to no teaching or suggestion to a person of ordinary skill to look to a floor tile construction and convert it into the design of a mold to make a concrete simulated stone outdoor walkway. That idea came from Hupp, not from the prior art. We conclude that the jury's presumed findings with respect to the *Graham* factors do not warrant the legal conclusion of obviousness.

The judgment of invalidity is reversed.

## II

### PATENT INFRINGEMENT

Siroflex's president conceded at the trial that he acquired a sample of the Hupp product at a trade show and, using the same concept, made the accused Siroflex mold for an outdoor walkway of concrete stones. The Siroflex position was that its mold design was sufficiently changed to avoid infringement. Siroflex pointed out that the use of such molds is known in the art, citing the Noack reference, and that the Siroflex mold design is different:

### A

■ The jury found that Siroflex did not infringe the D'528 patent. Hupp argues that the verdict arose from a misleading jury instruction, as follows:

> Siroflex of America, Inc. would be liable for infringing Plaintiffs' patent if you find that Plaintiffs have proven by a preponderance of the evidence that Siroflex has used or sold products made according to the design claimed in Plaintiffs' patent *and that Plaintiffs' patent is valid.*

(Emphasis added.) Hupp states that when the jury held the patent invalid, the instruction left the jury no choice but to find non-infringement.

■ In retrospect, the construction of this instruction is not optimum. Although it is of course a correct statement of law, a jury might have been uncertain as to how to respond, depending on how these issues were presented at trial and argued by counsel. However, Hupp does not state that he raised this objection when the instruction was given, or that he sought clarification of the verdict before the jury was dismissed. *See Pan Eastern Exploration Co. v. Hufo Oils*, 855 F.2d 1106, 1124 (5th Cir.1988) ("It seems likely that in the case of a potentially ambiguous general verdict all the complaining party must do to protect his rights is to object to the charge and the submission vel non of the questionable theory or theories; probably he

need not object to the ambiguity inherent in its submission. . . .")[2]

The now-asserted ambiguity would surely have been apparent when the jury returned its special verdicts of both invalidity and noninfringement. The time to clarify the verdicts, if Hupp was in doubt, was immediately. *See Unit Drilling Co. v. Enron Oil & Gas Co.*, 108 F.3d 1186 (10th Cir.1997) ("In *Resolution Trust,* we distinguished questioning that is aimed at discovering what occurred during deliberations, which is prohibited by Fed.R.Evid. 606(b), from questioning aimed at clarifying the verdict, of which we approved.") The Fifth Circuit permits resubmission of ambiguous or conflicting jury verdicts for clarification. *See Nance v. Gulf Oil Corp.*, 817 F.2d 1176, 1178 (5th Cir.1987) ("[I]t has long been established in this Circuit that inconsistent special verdict answers may be resubmitted to a jury for clarification of the inconsistency.")

Any absence of precision in the verdict, flowing directly from absence of precision in the question presented for verdict, has only extremely rarely been remedied by granting a new trial, and then only when the interest of justice plainly so required and a different result would have been likely to ensue. In *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537, 541 (5th Cir.1980), the court explained that to reverse or vacate a jury verdict for which there was substantial evidentiary support, based on an erroneous or unclear instruction to which no objection was made, "the plaintiff must establish that the instruction was an incorrect statement of law and that it was probably responsible for an incorrect verdict, leading to substantial injustice."

In this case, the jury found that there was not infringement. If deemed ambiguous the answer could have been clarified, but was not. Although the Fifth Circuit leaves room for the appellate remedy of ordering a new trial when the interest of justice requires, the standards therefor were not here met. The instruction was not an incorrect statement of

law, although it bore a potential for ambiguity. Whether the jury would have decided differently on a more precise instruction is indeed speculative, for there was substantial evidence on which the jury could have reached a verdict of non-infringement, as we discuss in Part B *post.* Although clarification was possible at the trial, that remedy is not available when the issue is raised for the first time on appeal. In these circumstances, it is inappropriate to order a new trial.

## B

■ A design patent contains no written description; the drawings are the claims to the patented subject matter. To infringe a design patent the accused article must appropriate the features of the patented design and its overall appearance. *L.A. Gear v. Thom McAn,* 988 F.2d at 1125, 25 USPQ2d at 1918; *Litton v. Whirlpool,* 728 F.2d at 1444, 221 USPQ at 109. Infringement is determined from the viewpoint of the ordinary observer, whereby the observer would be led to believe that the article of one producer is that of another because of their similarity in design. *Gorham Co. v. White,* 81 U.S. (14 Wall.) 511, 528, 20 L.Ed. 731 (1871).

■ Hupp points to the similar appearance of the Siroflex and his patented articles and their overall effect including size and shape, as well as the similarity of the mold designs. Although the design of articles having the identical use need not be identical in order to infringe the patent, *see Gorham,* 81 U.S. at 530 ("[T]hough variances in the ornament are discoverable, the question remains, is the effect of the whole design substantially the same?"), the designs must be sufficiently similar that a purchaser would be deceived into buying one article thinking it was the other. *Id.* at 528; *Avia,* 853 F.2d at 1565, 7 USPQ2d at 1554. There was substantial evidence at trial of the differences as well as the similarities between the D'528 mold design

---

**2.** On matters not the exclusive appellate assignment of the Federal Circuit, we look to the law and practices of the circuit of trial. *See National*

*Presto Indus., Inc. v. West Bend Co.,* 76 F.3d 1185, 1188 n. 2, 37 USPQ2d 1685, 1686 n. 2 (Fed.Cir.1996).

and the Siroflex mold design. Although there was some evidence of consumer confusion, a reasonable jury could have found that the Siroflex mold design was not substantially the same and did not have substantially the same effect, and did not infringe the D'528 patent.

The judgment of non-infringement is affirmed.

## III

### INEQUITABLE CONDUCT

▪▪▪▪▪ The issue of inequitable conduct during prosecution of the D'528 patent in the Patent and Trademark Office was presented to the jury. Trial courts have followed a variety of procedures for determining this issue during a jury trial. For example, in *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 542, 16 USPQ2d 1622, 1625 (Fed. Cir.1990) the question of inequitable conduct was submitted for jury verdict with the agreement of the parties, whereas in *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1408, 30 USPQ2d 1149, 1151 (Fed.Cir.1994), only the factual questions of materiality and intent to deceive were submitted for jury findings. On appeal of a jury verdict of inequitable conduct, we review the proceedings to determine whether there was substantial evidence supporting actual or inferred findings of the factual questions of (1) whether there was withholding of information material to patentability, (2) with the intent to deceive or mislead the patent examiner. In order to establish inequitable conduct it was necessary for Siroflex to establish these facts by clear and convincing evidence. *See Kingsdown Medical Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 876, 9 USPQ2d 1384, 1392 (Fed.Cir.1988) (*en banc*) (both materiality and culpable intent must be proved). Only when the facts of materiality and intent are established does the decisionmaker exercise its discretion to decide whether, considering all the circumstances, inequitable conduct shall be found. *Modine Mfg. Co.*, 917 F.2d at 542, 16 USPQ2d at 1625.

▪▪ Two areas of assertedly withheld information were presented at trial: (1) the Houston newspaper advertisement of the ceramic floor tile and (2) Hupp's correspondence with the invention submission agency. The verdict form did not ask the jury to state the basis of its verdict. We look first at the evidence based on the newspaper advertisement. Siroflex argued at trial that Hupp must have known of the newspaper advertisement, despite his denials, because it was published at about the time of Hupp's development and because the stone shapes are quite similar. Siroflex argued that the advertisement was material to patentability and that Hupp withheld it with intent to deceive the examiner into granting the patent. Hupp argued that it is irrelevant whether he saw the ad, because his invention is the design of a plastic mold for a concrete walkway, and that a person of ordinary skill would not view the ceramic tile floor as material to the patentability of a concrete mold design. Thus Hupp argued that materiality was not shown by clear and convincing evidence, and that a reasonable jury would not have found otherwise.

As discussed *ante*, the ceramic floor tile is not analogous prior art. As such, it is not material to the patentability of Hupp's design, and the failure to submit the tile advertisement to the Patent Office cannot support a judgment of inequitable conduct.

Intent is an independent element of inequitable conduct in patent prosecution, and must be separately established. *Allied Colloids, Inc. v. American Cyanamid Co.*, 64 F.3d 1570, 1578, 35 USPQ2d 1840, 1845 (Fed. Cir.1995). As discussed in *Kingsdown*, a finding of culpable intent requires evidentiary support, for "the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive." 863 F.2d at 876, 9 USPQ2d at 1392. Assuming that the jury believed that Hupp knew of the floor tile, or even was inspired thereby, knowledge or inspiration does not establish that it was culpably withheld, especially when, as here, the

undisclosed reference is not material to patentability. *See Allen Organ Co. v. Kimball Int'l, Inc.*, 839 F.2d 1556, 1568, 5 USPQ2d 1769, 1779 (Fed.Cir.1988) ("knowledge alone is not culpable intent"). Although there may be special circumstances in which intent is appropriately deemed established by inference alone, there must be sufficient evidence to support such inference. *See Northern Telecom, Inc. v. Datapoint*, 908 F.2d 931, 939, 15 USPQ2d 1321, 1327 (Fed.Cir.1990) ("Given the ease with which a relatively routine act of patent prosecution can be portrayed as intended to mislead or deceive, clear and convincing evidence of conduct sufficient to support an inference of culpable intent is required."); *Kingsdown*, 863 F.2d at 876, 9 USPQ2d at 1392 ("[A] finding that particular conduct amounts to 'gross negligence' does not of itself justify an inference of intent to deceive; the involved conduct, viewed in light of all the evidence, including evidence indicative of good faith, must indicate sufficient culpability to require a finding of intent to deceive.")

There was not substantial evidence of record whereby a reasonable jury could have found, by clear and convincing evidence, the facts necessary to support a holding of inequitable conduct. This verdict can not be sustained based on the Houston newspaper advertisement.

 At trial Siroflex argued that Hupp should have told the patent examiner of his submission to the Invention Submission Corporation more than a year before the patent filing date. As discussed in Part I, this was not an on-sale event. Siroflex told the jury that even if the submission were not an on-sale event, it should have been presented to the patent examiner so that the examiner could decide whether it was.

There is no obligation to present the examiner with information that is not material to patentability, on pain of loss of patent rights based on inequitable conduct. The requirement, as clarified in *Kingsdown*, is that information that is known to be material to patentability can not be intentionally withheld

from the examiner. Since the correspondence with the Invention Submission Corporation could reasonably have been believed not to start an on-sale bar, and since there was no evidence whatsoever of culpable intent in not telling the patent examiner of this correspondence, the verdict of inequitable conduct can not be sustained on this ground.

Absent sufficient evidentiary basis, the judgment of unenforceability based on inequitable conduct is reversed.

## IV

### TRADE DRESS INFRINGEMENT

 Trade dress is the packaging and general presentation of a product. *Blue Bell Bio–Medical v. Cin–Bad, Inc.*, 864 F.2d 1253, 1256, 9 USPQ2d 1870, 1872 (5th Cir.1989) ("The 'trade dress' of a product is essentially its total image and overall appearance.")

Hupp packages its mold in a cardboard sleeve with the ends of the mold protruding so that a portion is visible to the customer. On the cardboard sleeve is prominently illustrated a stone walkway constructed using the mold, and instructions for use. The trademark "WalkMaker" appears in large letters. The Siroflex mold is also packaged in a cardboard sleeve with the ends of the mold protruding and visible to the customer. On the cardboard sleeve is prominently shown a stone walkway, and instructions for using the mold. The Siroflex sleeve displays the trademark "Rock 'N' Mold" in large letters. The packages are of similar size and shape.

 The jury was instructed that Hupp must establish that his "trade dress is inherently distinctive, non-descriptive and non-functional," on the following criteria:

If Plaintiffs' trade dress has a useful function, for example, if it primarily consists of instructions and descriptive matter on how to use the product, or pictorial diagrams of the product's results, then Plaintiffs' trade dress is functional and not entitled to protection. You may also find that Plaintiffs'

trade dress is functional if it is one of a limited number of options of design available to competitors of Plaintiffs and the competition would be unduly hindered by affording protection to the Plaintiffs' trade dress. On the other hand, if you find that Plaintiffs' trade dress is primarily arbitrary, fanciful, or suggestive and is solely for the purpose of identification and individuality, then you may find that Plaintiffs' trade dress is nonfunctional.

Hupp does not state that he objected to these instructions.

The jury found by special verdicts that the trade dress for Hupp's package was (1) functional, and (2) not inherently distinctive. Hupp now argues that the instructions do not correctly state Fifth Circuit law, that it is not necessary that the packaging be "solely for the purpose of identification and individuality" to be nonfunctional, and that the presence of descriptive text does not convert a distinctive trade dress into one that is functional. We agree that the instructions that were given did not stress that a distinctive combination of functional features may comprise a distinctive trade dress, *see generally Two Pesos Inc. v. Taco Cabana Inc.*, 505 U.S. 763, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992). However, Hupp did not preserve this objection to the jury instructions. Thus although the Fifth Circuit has explained that the variety of available packaging styles weighs against copying a competitor's packaging, *e.g.*, *Sicilia Di R. Biebow & Co. v. Cox*, 732 F.2d 417, 427 n. 7 (5th Cir.1984), the objection that is now made to the instruction must be deemed waived.

■ Hupp argues that the evidence of confusing similarity between the packages was strong, and that the jury findings that his trade dress is functional and not inherently distinctive are unsupported by substantial evidence. He stresses that his trade dress was copied by Siroflex. Siroflex, in turn, points to the conflicting evidence before the jury on the issue of likelihood of confusion, to the opposing expert opinions, to the absence of objection by Hupp to the jury

instructions that he now challenges, and to the full exposition of this factual issue at trial.

Both sides' packages were present as exhibits at trial. Giving appropriate weight to the jury's opportunity to observe the actual trade dress of both parties, and recognizing the factual areas of conflict in the evidence, we conclude that on the instructions at trial there was substantial evidence to support the jury verdict. The verdict of non-infringement of trade dress must be affirmed.

V

### HUPP'S SECURITY BOND

■ Hupp's pre-trial request for a preliminary injunction had been granted, and Hupp was required to post a $10,000 bond pursuant to Fed.R.Civ.P. 65(c), which provides:

> **65(c) Security.** No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.

After entering judgment in favor of Siroflex the district court declined to award the bonded amount, stating that Siroflex was "trying to 'gild the lily.'" Siroflex argues on appeal that its injury from the injunction exceeded the amount of the bond, and that it is entitled to the amount of the bond.

To determine the scope of the trial court's discretion with respect to award of an injunction bond, we look to the law of the regional circuit, for this issue is not unique to the Federal Circuit's exclusive assignment. The Fifth Circuit does not make automatic the award of the amount of the injunction bond. In *H & R Block, Inc. v. McCaslin*, 541 F.2d 1098, 1099 (5th Cir.1976) the court held that the district court was within its discretion in declining to award the injunction bond unless the plaintiff acted in bad faith in obtaining

the preliminary injunction. Although this ruling has been criticized in some other circuits, *e.g.*, *Coyne–Delany Co. v. Capital Dev. Bd.*, 717 F.2d 385, 391 (7th Cir.1983), and has not been universally applied in the Fifth Circuit, *H & R Block* has not been overruled. Precedent clearly gave the trial court the discretion that was here exercised. This ruling is affirmed.

No costs.

*AFFIRMED IN PART AND REVERSED IN PART.*