**BANJO BUDDIES, INC., Plaintiff**

v.

**Joseph F. RENOSKY and Renosky Lures, Inc. Defendants**

**No. CIV. 01–131–B–H.**

United States District Court,
D. Maine.

Aug. 20, 2001.

ORDER ON PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION [1]

HORNBY, Chief Judge.

This lawsuit is a patent infringement case involving fishing lures. The plaintiff, Banjo Buddies, Inc. ("Banjo Buddies"), has a utility patent and a design patent that are embodied in its Banjo Minnow fishing lure. Banjo Buddies claims that the defendants, Joseph F. Renosky and Renosky Lures, Inc. ("Renosky"), are selling a lure kit, called the "Boomerang," that includes lures that infringe the patents. Banjo Buddies has moved for a temporary restraining order and a preliminary injunction to enjoin the defendants from infringing the patents. I **DENY** the motion because Banjo Buddies has not shown a likelihood of success on its claim that the defendants are infringing the utility patent, nor overcome the defendants' persuasive showing that the design patent is invalid.

## I. FACTS

The basic facts are straightforward. Banjo Buddies sells a patented soft-bodied fishing lure called the "Banjo Minnow," which resembles a small fish. The patents are a reexamined utility patent, U.S. Patent No. 5,855,089, and a design patent, U.S. Patent No. Des. 389,894. Banjo Buddies' former chief executive officer, Joseph Renosky, and his company, Renosky

Todd S. Holbrook, Esq., Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Banjo Buddies Inc., plaintiffs.

Christopher B. Branson, Esq., Murray, Plumb & Murray, Portland, ME, C. James Zeszutek, Esq., John J. Richardson, Esq., Thorp, Reed & Armstrong, LLP, Pittsburgh, PA, for Joseph F. Renosky, Renosky Lures, Inc., defendants.

1. At a telephone conference that I held with the parties on July 3, 2001, I made clear that I would not address the availability of injunctive relief in this case on three separate occasions, that is, in a motion for a temporary restraining order, a motion for a preliminary injunction, and then again at trial. Instead, I suggested that I would address it twice: once prior to trial, and once at trial. The plaintiff had at that point filed this dual motion for a temporary restraining order and a preliminary injunction, and the defendants had notice. Given my statements at the conference and the fact that the defendants had notice, I treat this as a motion for a preliminary injunction. I am, however, setting an expedited discovery schedule so that there should not be any need for intermediate relief.

Lures, are advertising and selling a lure kit called the Boomerang. The kit includes an assortment of lures (including six "Alabama Crippled Shad" lures, eight "Bionic Body" lures, and a forty-piece "Soft Bait Assortment"); miscellaneous other equipment including hooks and weights; and a "Tips" booklet or instruction manual. Aff. of Russell Walters at ¶¶ 3–5. Banjo Buddies claims that the Boomerang kit infringes the design and utility patents. In its motion it focuses on a lure-to-hook arrangement that it assembled using one of the pieces from the Soft Bait Assortment and other equipment included in the Renosky kit. That lure—the accused device—is in the shape of a small fish with a tail fin, a dorsal fin, and two fins on its underside. It is translucent toward its top, and opaque toward its bottom. A looped spiral grip is screwed into the fish's mouth, and the hook is attached by inserting its pointed end through the loop. The fish is held in place on the hook with two small rings. The hook is bowl-shaped, with a barbed point and an open eye at its shank end.

## II. PATENT OWNERSHIP

Before proceeding to the substantive patent issues, I address Renosky's argument that Banjo Buddies does not own the rights to the patents it seeks to enforce. It is clear that at one time Banjo Buddies did own the rights: in February of 1996, the patents' named inventors transferred their "entire patent interest, including pending and subsequent applications," to Banjo Buddies. Pl.'s Reply, Ex. 1. But Renosky asserts that Banjo Buddies subsequently transferred its rights to a company called Tristar Products, Inc. ("Tris-

tar"), and that Banjo Buddies therefore cannot bring this action. Defs.' Resp. at 2 n. 1, 4–5. In support of this assertion Renosky points to a 1998 agreement among Banjo Buddies, Tristar, and the defendants, which states in its preamble that "Tristar currently has the exclusive world-wide right to use, distribute, sell, advertise, promote, and otherwise exploit the 'Banjo' brand fishing lures." Defs.' Sur–Reply, Ex. A. The substantive provisions of that agreement, however, relate not to any transfer of patent rights from Banjo Buddies to Tristar, but rather to giving Renosky the exclusive right to manufacture, sell, and distribute spare parts using the Banjo trademark. The agreement's introductory reference to Tristar's exclusive right to exploit the Banjo brand simply does not show that Banjo Buddies has given up its right to enforce the patents. Accordingly, on the record before me, I conclude that Banjo Buddies can bring this action.[2]

## III. APPLICABLE LAW

■ The Federal Circuit has stated that the grant of a preliminary injunction is "a matter of procedural law not unique to the exclusive jurisdiction of the Federal Circuit," so that "the law of the regional circuit in which the case was brought" applies. *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 894 (Fed.Cir. 1998). But the Federal Circuit has also stated that it will give dominant effect to its own precedent regarding the general considerations underlying the grant or denial of a preliminary injunction "insofar as [they] reflect[ ] considerations specific to patent issues." *Id.* Stated another way, the law of the regional circuit governs

---

**2.** In the defendants' sur-reply (the filing of which I hereby allow) they request that I delay ruling on the motion until after Tristar's deposition, which is currently scheduled to take place in connection with another lawsuit on September 26–27, 2001. I DENY that request.

purely procedural questions, while the law of the Federal Circuit governs procedural questions that involve " 'substantive matters unique to patent law.' " *Id.* at 894 n. 3 (quoting *Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1451 n. 12 (Fed.Cir.1988)).

■ In any event, the First Circuit's general considerations regarding preliminary injunctions are identical to the Federal Circuit's considerations. *Compare Pharm. Research and Mfrs. of Am. v. Concannon,* 249 F.3d 66, 72 (1st Cir.2001), *with Amazon.com, Inc. v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350 (Fed.Cir. 2001). A party moving for a preliminary injunction must show "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." *Amazon.com,* 239 F.3d at 1350. A likelihood of success on the merits and irreparable harm are prerequisites: a preliminary injunction cannot be granted unless the movant shows both of them. *Id.; accord Pharm. Research,* 249 F.3d at 72 (stating that a likelihood of success on the merits is the " 'sine qua non' of the preliminary injunction analysis"); *Suarez–Cestero v. Pagan–Rosa,* 172 F.3d 102, 104 (1st Cir. 1999) ("Irreparable harm is a necessary precondition to a preliminary injunction.").

## IV. VALIDITY AND INFRINGEMENT

In order to demonstrate a likelihood of success on the merits, Banjo Buddies must show that its patents are valid and infringed. *Amazon.com,* 239 F.3d at 1350. The first step is patent claim construction: I must determine the " 'the meaning and scope of each claim in suit.' " *Amazon.com,* 239 F.3d at 1351 (quoting *Lemelson v. Gen. Mills, Inc.,* 968 F.2d 1202, 1206 (Fed.Cir.1992)). "Only when a claim is properly understood can a determination

be made whether the claim 'reads on' an accused device or method, or whether the prior art anticipates and/or renders obvious the claimed invention." *Amazon.com,* 239 F.3d at 1351.

### A. The Utility Patent

#### 1. Claim Construction

■ "Proper claim construction is informed by three sources: the claims, the specification, and the prosecution history." *MediaCom Corp. v. Rates Tech., Inc.,* 4 F.Supp.2d 17, 25 (D.Mass.1998). The claims are the first and primary source. *See K–2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1362 (Fed.Cir.1999) ("We begin, of course, with the language of the claims."); *Abtox, Inc. v. Exitron Corp.,* 122 F.3d 1019, 1023 (Fed.Cir.1997), *amended on rehearing by* 131 F.3d 1009 (1997); *MediaCom,* 4 F.Supp.2d at 26. Generally, claim terms are given "their ordinary and accustomed meaning as understood by one of ordinary skill in the art." *Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.,* 257 F.3d 1364, —— (Fed.Cir.2001). "The process of claims construction is concluded when the Court is satisfied that it has arrived at the correct understanding of the claims language, and is prepared to pronounce that meaning as a matter of law." *MediaCom,* 4 F.Supp.2d at 26.

Banjo Buddies' allegations of infringement focus on Claims 1 and 5 of the utility patent. They read:

1. A fish lure having a unit of integral fish form having a natural spastic action of a crippled fish when jerked through the water by a hook and line, consisting of:

 a translucent textured body portion including a tail attached at one end of said body portion and a head attached at the other end of said body portion;

said head adapted to include a mouth portion;

fins attached to said textured body portion;

said integral fish form having a specific gravity equal to that of water and giving said fish form a neutral buoyancy;

light reflective particles dispersed within said textured body portion;

and said textured body portion having a pliable thin tapered shape, and adapted so that when jerked through the water a wave-like ripple movement travel down said body; and

means for attaching said fish lure to said hook screwed into said mouth.

. . . .

5. A lure to fish hook arrangement, such arrangement comprising:

a substantially coplanar fish hook, said fish hook including a shank, said shank having a base and said base being substantially bowl shaped, a hook point including, a hook point barb attached to said shank; an eye attached to one end of said shank and on an opposite end to said hook point;

a fish lure attached to said hook and in closer proximity to said hook point barb consisting of a translucent textured body portion including a tail attached at one end of said textured body portion and a head attached at the other end of said textured body portion, said fish lure having a specific gravity equal to that of water and giving said integral fish form a neutral buoyancy, said head adapted to include a mouth portion, fins attached to said textured body portion, light reflective particles dispersed within said textured body portion, said textured body portion having a pliable thin tapered shape and adapted so that when jerked through the water a wave-like

ripple movement travels down said textured body portion;

said hook point barb having a linear surface;

said hook having means for attaching said fish lure to said hook and means for attaching including a coil screwed into the mouth portion of said fish lure allowing free and natural movement of said fish lure; and

said hook having means for restricting the movement of said fish lure along said fish [sic] shank while keeping said fish lure in close proximity with said linear surface of said hook point barb.

The claim language is straightforward, and the parties do not dispute its meaning. Claim 1 describes a pliable thin tapered fishing lure in the shape of a small fish with a translucent speckled body that neither floats on nor sinks in water (*i.e.*, neutral buoyancy). The lure is adapted so that when jerked through water it exhibits what the claim alternatively characterizes as either the "natural spastic action of a crippled fish" or a "wave-like ripple movement" that travels down its body. It also describes a means for attaching a hook at the lure's mouth. Claim 5 describes the lure as attached to a bowl-shaped hook that has a barbed point at one end and an open eye, or loop, at the shank. It is more specific about the means for attaching the lure to the hook: a coil screwed into the lure's mouth that allows the lure to move freely and naturally, but that holds it in place along the hook. It repeats that the fish lure has a neutral buoyancy. The other claims in the patent relate to what the lure is made of (Claims 2 and 9), the characteristics of the hook (Claims 3, 4, 10 and 11), and the means for restricting the lure's movement along the hook (Claims 6–8).

### 2. Validity

▮▮ Renosky challenges the utility patent's validity. At trial, an alleged infringer has the burden of proving an invalidity defense by clear and convincing evidence. But at the preliminary injunction stage the patentee must "present a clear case supporting the validity of the patent in suit." *Amazon.com*, 239 F.3d at 1359. The patentee satisfies that burden through the very existence of the patent, which is presumed valid, *see* 35 U.S.C. § 282, unless the infringer comes forward with persuasive evidence that the patent is invalid. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d, 1359, 1365 (Fed. Cir.2001); *Canon Computer Sys., Inc. v. Nu–Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed.Cir.1998); *H.H. Robertson Co. v. United Steel Deck, Inc.*, 820 F.2d 384, 387–88 (Fed.Cir.1987), *overruled on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977 (Fed.Cir. 1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The persuasive evidence necessary at the preliminary injunction stage is something less than the clear and convincing evidence necessary to establish invalidity at trial. *Amazon.com*, 239 F.3d at 1359. If the infringer does come forward with persuasive evidence of invalidity, then the preliminary injunction should not be granted unless the patentee can show that the invalidity defense "lacks substantial merit," for example, by "showing that the patent in suit had successfully withstood previous validity challenges in other proceedings," or "a long period of industry acquiescence in the patent's validity." *Amazon.com*, 239 F.3d at 1350–51, 1359. In short, the patentee must show that its patent is likely to withstand the challenges to its validity. *Amazon.com*, 239 F.3d at 1350.

▮▮ Renosky asserts that the utility patent is invalid because it does not name Joseph Renosky as an inventor, and that Joseph Renosky "contributed to the claimed subject matter," but that the named inventors—Wayne Hockmeyer and Kenneth Daubert—"unfairly and intentionally" omitted his name. Nonjoinder of an actual inventor does render a patent invalid under 35 U.S.C. § 102(f), unless the omitted inventor's name is added pursuant to the savings provision, 35 U.S.C. § 256. *See Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349–51 (Fed.Cir.1998). In this case, however, Renosky has failed to rebut the patent's presumption of validity because it has offered no proof whatsoever to support the bald assertions regarding the omission of Joseph Renosky's name.[3] Accordingly, I conclude that Banjo Buddies has demonstrated a likelihood of success on the utility patent's validity.

### 3. Infringement

▮▮ To determine infringement of a utility patent, "the properly construed claim is compared with the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent." *Amazon.com*, 239 F.3d at 1351 (Fed.Cir.2001); *K–2*, 191 F.3d at 1362. Banjo Buddies does not specify whether it alleges literal infringement or only infringement under the doctrine of equivalents. Its statement of the law— that there is infringement if the accused "product has every element or limitation of the claim"—applies to both types. Pl.'s Mot. at 10 (citing *Builders Concrete, Inc. v. Bremerton Concrete Prods. Co.*, 757 F.2d 255, 257 (Fed.Cir.1985)). "To find

---

**3.** For the same reason, I DENY the defendants' request for an order to correct the patent by adding Renosky as an inventor.

literal infringement, each limitation of the claim must be present in the accused device. Any deviation from the claim precludes such a finding." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed.Cir.2001). Infringement under the doctrine of equivalents exists "in some cases where the elements of the accused device are substantially equivalent to the corresponding elements of the asserted claim." *K–2*, 191 F.3d at 1366. The doctrine of equivalents is limited, *K–2*, 191 F.3d at 1366, and it " 'must be applied to individual elements of the claim, not to the invention as a whole.' Therefore, the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety." *K–2*, 191 F.3d at 1367 (quoting *Warner–Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S. 17, at 29, 117 S.Ct. 1040, 137 L.Ed.2d 146) (citations omitted); *see also Forest Labs., Inc. v. Abbott Labs.*, 239 F.3d 1305, 1313 (Fed.Cir. 2001) (stating that the Federal Circuit has "not dispense[d] with the need for one-to-one correspondence of limitations and elements" under the doctrine of equivalents).

 Banjo Buddies compares the elements of Claims 1 and 5 to the lure-to-hook arrangement it assembled using Renosky's Boomerang lure kit, asserting that each element of both claims is present in the accused device. *See* Pl.'s Mot. at 4–6. Most of those assertions are quite obviously true (for example, that both lures have fins and a mouth). But the truth of the assertion that the accused device has a neutral buoyancy is not at all obvious, and it is unsupported by any credible evidence. Banjo Buddies bases its assertion of neutral buoyancy on various "how to fish" diagrams in the Boomerang kit's instruction manual that show Renosky's lures, in Banjo Buddies' view, "suspended in water, *i.e.*, neither floating nor sinking." Renosky's memorandum flatly denies that any of the lures in the Boomerang kit have a neutral buoyancy, asserting instead that they float. Defs.' Resp. at 11. The defendants' supporting affidavit, however, is circumspect: it states that the Alabama Crippled Shads and the Bionic Minnows float, but only that "substantially all" of the lures in the Soft Bait assortment float. Aff. of Robert J. Veal ¶¶ 12–13.[4] Notwithstanding that circumspection in the affidavit, I conclude that in relying solely on the "how to fish" diagrams Banjo Buddies has failed to satisfy its burden of showing that the Renosky lures in fact have a neutral buoyancy. In each of the diagrams the lure is attached to a *weighted* line, confounding any attempt to discern from the diagrams alone whether the lures float. Even if that were not the case, I reject Banjo Buddies' implicit assertion that the simple diagrams were intended to indicate anything about the lures' buoyancy.[5] Banjo Buddies has failed on this motion to show that any lure in the Boomerang kit reads on *every* element of either Claim 1 or Claim 5 of the utility patent.[6] It has

---

4. Banjo Buddies argues that I should not consider Robert Veal's affidavit because Veal is a lawyer "offering nothing more than additional argument and should not be given the weight of evidence." Pl.'s Reply at 3. That is an incorrect characterization of Veal's affidavit. Veal is a lawyer and he does offer his legal opinion, but he states that he is familiar with the defendants' products and offers facts. *See* Aff. of Robert J. Veal at ¶¶ 5, 8–14.

5. The one exception is a "how to fish" diagram that states that the Renosky Bionic Minnow will float if slack line is allowed, a statement contrary to the infringement claim of neutral buoyancy.

6. Banjo Buddies also makes the assertion that the Renosky lures infringe the patented "natural spastic action of a crippled fish when jerked in the water." Other than referencing the Renosky lures' thin pliable shape, Banjo Buddies has not offered any evidentiary sup-

therefore failed to carry its burden of showing a likelihood of success on its infringement claims.[7]

## B. The Design Patent

### 1. Claim Construction

The design patent claims the ornamental design for a fishing lure, as shown in figures of the front, side, and top view of the lure. It is the design of the lure described in the utility patent, and the patents use the same figures. The figures are of a realistic slender fish form attached to a hook. The fish has one dorsal fin and two fins on its underbelly. It is speckled towards its top, with a pattern resembling scales on its sides. Its eyes appear dark, and its head and snout are outlined by a dark sidelong oval. The hook is apparently attached to the fish body by passing its barbed end through a loop affixed to the fish's mouth.

### 2. Validity

A design patent may be granted for a "new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. The presumption of validity and burden-shifting framework discussed above with respect to utility patents also applies to design patents. *See Chrysler Motors Corp. v. Auto Body Panels of Ohio, Inc.*, 908 F.2d 951, 953–53 (Fed.Cir.1990).

▌ Renosky challenges the design patent's validity on the basis that the design of the Banjo Buddy lure is functional, not ornamental. To be patentable, a design must be primarily ornamental. *See*

*Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed.Cir.1997); *Avia Group Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563 (Fed.Cir.1988). It is the functionality of the design itself that invalidates a design patent, not the functionality of the article. *Hupp*, 122 F.3d at 1460. The determination of whether a design is primarily ornamental must be based on its overall appearance, but "only 'the non-functional aspects of an ornamental design ...' are proper bases for design patent protection." *Door–Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308 (Fed.Cir.2001) (quoting *KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed.Cir.1993)); *accord OddzOn Products, Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed.Cir.1997); *Lee v. Dayton–Hudson Corp.*, 838 F.2d 1186, 1188 (Fed.Cir.1988) (stating that by obtaining a design patent rather than a utility patent the patentee had limited his protection to the ornamental design of the article). One reason for the nonfunctionality limitation is that "[w]hen function dictates a design, protection would not promote the decorative arts, a purpose of the design patent statute." *Avia*, 853 F.2d at 1563.

▌ In this case, Renosky argues that function, not ornament, dictates the design of the Banjo Buddies patents, as betrayed by the existence of the utility patent. While the mere existence of the utility patent proves nothing—it is possible to hold both a utility patent and a design patent in the same article, *see Avia*, 853 F.2d at 1563—I agree ultimately with Renosky's functionality argument and so I

---

port for the proposition that the lures actually do exhibit the claimed behavior. Renosky's opposition does not raise that shortcoming, however, so I do not address it here.

**7.** Given my conclusion, I do not address Renosky's argument relating to its Alabama Crippled Shad lure, *see* Defs.' Resp. at 10–11

(which in any event is not the target of Banjo Buddies' infringement allegations), nor do I address the argument that the Renosky instruction manual does not contemplate the lure-to-hook arrangement that Banjo Buddies assembled using the Boomerang kit.

conclude for purposes of this motion that it has made a persuasive showing of invalidity.

First, with respect to the lure-to-hook configuration, the utility patent's specifications state that the configuration "affords greater bite to hook ratio" and "allows the bait to be attached to the hook leaving the hook completely exposed." The appearance of the lure-to-hook configuration is dictated entirely by its function, and the design patent therefore does not protect it.

That does not end the inquiry into the design patent's validity, however, because ornamental, nonfunctional aspects of the design may nonetheless be entitled to protection. But Renosky points out that the utility patent describes the appearance of the fish as "life-like in that it incorporates a two tone effect ... the middle portion having a textured surface resembling scales," all designed to achieve the function of making the lure, when dragged through the water, look like a crippled dying minnow. Banjo Buddies has failed to respond to this assertion that the entire design is functional by pointing to any aspects of its design that are ornamental; it has therefore failed to carry its burden of showing that Renosky's invalidity defense "lacks substantial merit." *See Amazon.com,* 239 F.3d at 1350–51. Accordingly, for purposes of this motion, I conclude that Banjo Buddies is unlikely to succeed on the merits with respect to the validity of its design patent.[8]

## IV. CONCLUSION

Banjo Buddies has failed to show a likelihood that the defendants have infringed the utility patent, and it has failed to overcome the defendants' strong challenge to the design patent's validity. Accordingly, Banjo Buddies' motion for a temporary restraining order and preliminary injunction is DENIED. *Cf. Reebok Int'l Ltd. v. J. Baker, Inc.,* 32 F.3d 1552, 1556 (Fed.Cir. 1994) (stating that a district court may deny a preliminary injunction based on the movant's failure to establish either a likelihood of success on the merits or irreparable harm "without making additional findings respecting the other factors").

So ORDERED.

---

**8.** As the Federal Circuit has reminded us: "In resisting a preliminary injunction, however, one need not make out a case of actual invalidity. Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial." *Amazon.com,* 239 F.3d at 1359.